WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—March, 1886.

QUIN *v.* HILL.

*In the matter of the estate of* JOHN S. HILL, *deceased.*

A husband is bound, as matter of law, to bury the body of his deceased wife; yet he may be allowed the funeral expenses out of her estate, if any. But a third person who unnecessarily interferes and gives direc-

tions, as to the expenditures, becomes personally and ultimately liable for the amount thereof.

In order to warrant the allowance of a counterclaim against the liability of an executor or administrator, on account of the estate which he represents, the debts must be mutual, and due to and from the same persons in the same capacity.

Upon the judicial settlement of the account of the executrix and executor of decedent's will, a decree was rendered, directing the payment of about $600 to the administrator of the estate of A., one of the beneficiaries under the will, who had died subsequently to the testator. The administrator having instituted proceedings to compel the payment to him of the sum so decreed, the executors sought to set off against this liability a demand representing the amount of an undertaker's bill incurred on account of the funeral expenses of such beneficiary.

It appeared that F., the executrix, who was the mother of A., in the presence of A.'s husband, had given to the undertaker the directions for the burial, instructing him to spare no expense in respect thereto, with which instructions the latter had complied; and that, upon her refusal to pay the bill, an action had been brought, and a personal judgment recovered against her for the amount, which she paid, taking an assignment thereof to herself and her co-executor, in their representative capacity.—*Held*,

1. That F., by her officious interference in the matter of her daughter's burial, and by ignoring the rights and duties of the husband in the premises, relieved both him and the daughter's estate from the obligation otherwise imposed upon them by law, and became personally liable for the expenses in question.

2. That it was not competent for F., by procuring the assignment mentioned, to transmute the demand from one against herself, into one in the executors' hands against the estate of her daughter, and that, therefore, the counterclaim should be disallowed.

THE testator left a daughter, Arabella, the wife of Henry W. Quin, Jr., who was a beneficiary under the will, and who died in January, 1885. The executors, Frances C. Hill and Edward Petit, rendered an account of their proceedings, which resulted in a decree, entered June 5th, 1885, whereby it was, among other things, adjudged that there was due to Arabella Quin the sum of $613.64, and directed that the executors pay the same to her legal representative. Said Henry W. Quin, Jr., was appointed administrator of her estate

on the 29th day of the same month. Frances C. Hill, the mother of Arabella, in the presence of the husband of the latter, gave the directions for her burial to the undertaker, telling him to spare no expense, as it was the last thing she could do for her daughter. The Quins lived with Mrs. Hill, and the death took place at her house, where the funeral arrangements were made.

Solomon M. Ireland, the undertaker, presented his bill, amounting to $435.48, to Mrs. Hill, who declined to pay it. He then brought an action against her for its recovery. On July 15th, following, she paid it, and took an assignment of it to herself and Petit, as the executrix and executor of the will of their decedent. Thereafter the administrator took measures to compel the payment to him of the amount decreed to be due to his intestate. On the return of the citation, the executors sought to set off against it the amount of the undertaker's bill.

EDWARD F. BROWN, *for administrator.*

RODMAN & ADAMS, *for executors.*

THE SURROGATE.—As matter of law, a husband is bound to bury the body of his deceased wife, but he may now be allowed the funeral expenses out of her estate, if she have any ; and the executor or administrator is ultimately liable therefor, in most instances. But where, in the absence of the personal representative or the person bound to bury a dead body, or from the necessity of the case, another incurs the expense of a proper burial, he may recover it from the person

or estate that was bound to do it (Appendix to 4 *Redf. R.*, 527). An examination of the authorities collated by Mr. REDFIELD (Redf. Surr. Prac., 3rd ed., 465), and of those cited in Rappelyea v. Russell (1 *Daly*, 214), and in Patterson v. Patterson (59 *N. Y.*, 574), discloses the fact that, in this case, features are presented which do not exist in any of the cases relating to the subject. Here, the mother of the deceased, and in the presence of Mr. Quin, the husband, assumed the entire control of the arrangements for the burial ; sending for the undertaker, and directing him to spare no expense, as it was the last thing she could do for her daughter. This clearly showed an intention on her part to personally defray the charges. That the undertaker acted in pursuance of her request, is sufficiently apparent from the amount of his bill. It is equally clear that she was personally liable to him for it. As her daughter and the husband were living with her, and the death occurred under her roof, it was not unnatural that she should have had something to say in regard to the funeral arrangements, but she went much farther than to merely consult and advise ; she, officiously and in the presence of the husband, assumed the whole direction, ignoring his rights and duties in the premises, and thus relieved both him and the estate of his wife from the obligation otherwise imposed upon them by law.

There is another aspect of the case. It is not pretended that the executors of Mr. Hill, as such, incurred any obligation in regard to the funeral expenses. It was beyond the scope of their executorial powers. Mrs. Hill, finding that she could not successfully resist

the undertaker's claim, sought by his assignment of it, to transmute it from one against herself, into one in the executors' hands against the estate of her daughter. In other words, they purchased a claim which existed against her personally, and now seek to use it as a counterclaim against the amount of their liability as fixed by the decree. It seems to me that they might, with equal propriety, have purchased any debt which Mrs. Quin had incurred in her lifetime, and asked to have it allowed in this matter. Of course, that could not be done, because it would be a matter for the administrator to deal with in the due course of administration, to say nothing of their want of power as executors to purchase.

If the executors lacked the power to use the funds in their hands, to invest in this bill of Mr. Ireland, then it cannot be used here in the manner sought; and my researches have not enabled me to find any authority which would sanction such a procedure on their part. Mrs. Hill was aware of her personal liability to the undertaker, and had been sued by him before the decree fixing the amount due to the estate of Mrs. Quin had been entered. This funeral bill did not enter into consideration on that accounting; nor could it, as it then would have been an individual claim of Mrs. Hill. The decree fixed the sum which was due from the estate of John S. Hill, deceased, to Mrs. Quin or her legal representative, and the amount of this bill, which accrued since the death of the testator, and which the executors own personally, cannot be the subject of set-off or counterclaim against their liability on account of the estate they represent.

In order to warrant the allowance of such counterclaim, the debts must be mutual, and due to and from the same persons in the same capacity (Dudley v. Griswold, 2 *Bradf.*, 24, and cases cited).

As Surrogate BRADFORD well said, in the principal case, " the business of an executor or administrator is to settle the estate, pay the debts and distribute the surplus, and not to speculate in demands against the creditors" (and he might have added "legatees or distributees"). " It is not a legitimate purpose for which to employ the trust funds, to buy up debts against claimants; and if he does so, he must take the risk of such dealings upon his own individual responsibility. On the other hand, if such transactions be lawful, the money advanced to purchase such claims may be legally charged to the estate; and the consequences of such a doctrine may, in many cases, be most disastrous."

There are other reasons, unnecessary to be considered here, why the counterclaim should not be allowed. The grounds stated are deemed sufficient to warrant its rejection, and therefore, no good cause to the contrary being shown, the direction of the decree in this respect should be obeyed by the executors.

Ordered accordingly, with costs of the motion.