(Surrogate's Court, New York County. September, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 214*)—LIABILITIES—FUNERAL EXPENSES.

The law implies a promise on the part of a decedent's personal representatives to repay the decedent's necessary funeral expenses reasonably incurred by a stranger.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 755; Dec. Dig. § 214.*]

2. EXECUTORS AND ADMINISTRATORS (§ 214*) — LIABILITIES — FUNERAL EXPENSES.

Where the funeral expenses of a decedent incurred by a third person are unreasonable in amount, having regard to the decedent's financial condition, and were incurred by his brother, who declared to the widow his intention of burying her husband's remains without her knowledge if possible, and her rights in regard to the arrangements for the funeral were scantily recognized, and the brother posed as chief mourner, there is no implied promise on the part of the widow, as administratrix, to pay the expenses.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 755; Dec. Dig. § 214.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. EXECUTORS AND ADMINISTRATORS (§ 214*)—LIABILITIES—FUNERAL EXPENSES.
 Though an administrator is allowed on final accounting reasonable funeral expenses necessarily incurred, a judgment against him therefor is, in the first instance, de bonis propriis, and not de bonis intestatoris, and Code Civ. Proc. § 2729, sub. 3, providing that every executor shall pay out of the first moneys received the reasonable funeral expenses of the decedent, and the same shall be preferred to all debts and claims against the deceased, does not change this rule.
 [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 755; Dec. Dig. § 214.*]

4. EXECUTORS AND ADMINISTRATORS (§ 214*)—LIABILITIES—FUNERAL EXPENSES.
 Where one dies in Texas, possessed of a poor estate and leaving a widow in miserable financial condition, a funeral in New York, involving expensive transportation charges and a new casket purchased on the arrival of the remains in New York, are not matters of such necessity as to imply a promise of the widow, as administratrix, to pay for them, and the extravagance of the decedent's manner of living should not be considered as authorizing a heavier expense for his burial, and where the brother, who conducted the funeral, had received from Texas a sum reasonably sufficient to cover the cost, a further claim against the widow should be disallowed.
 [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 755; Dec. Dig. § 214.*]

In the matter of the estate of John P. Moran, deceased. Proceeding to compel payment by the administratrix of the funeral expenses of decedent. Dismissed.

Samuel J. Siegel, for petitioner.
John J. O'Grady, for administrator.

FOWLER, S. This matter now comes before the surrogate on an application by the brother of the deceased to compel the administratrix, who is the widow of the deceased, to pay to him the balance of a bill incurred by him for the funeral of his deceased brother. The estate now in the court is a very poor one, and if the widow is compelled to discharge the balance here demanded, she will have nothing left for herself after the expenses of administration are discharged. The deceased died in Texas, and his body was improperly, under the circumstances of his estate, sent here for burial. It appeared on the hearing before me that the brother who now petitions had received from Texas, out of the effects of the deceased, $145.93, and that the funeral in New York alone cost $243, although the deceased had died and been prepared for burial in Texas. The expense in Texas was defrayed there by some one unknown to the surrogate, but out of assets found on the person of the deceased. The widow has received in all from her husband's estate the sum of $108.53, and this, if the demand of the petitioner is now granted by me, she will lose. This is a hard situation, and demands more than common consideration from the surrogate.

[1] The duty of burying the dead is by the law of this state, in the first instance, that of the executors or administrators of the deceased. Patterson v. Patterson, 59 N. Y. 583, 17 Am. Rep. 384. The right of one who is not an administrator or executor to be reimbursed out

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the estate of a deceased person, or to recover over against his personal representatives, for the expense such stranger has been at for the funeral of such deceased, has occasioned great perplexity at common law when there was no express contract. It has been found most difficult to formulate a theory of contract which would stand the tests of both the substantive common law and its rules of procedure. As great a judge as Lord Holt said, in substance, in the year 1698, that there could be no recovery. 12 Mod. 256. But this ruling, if ever true, in practice was ultimately overruled. Yet as late as 1838 Sir Edward Vaughan Williams, a great authority, admitted that the law of England was very unsettled on this point. The decisions of the courts of this state bearing on this point are surprisingly few, and with one or two exceptions far from exhaustive.

Without reviewing the cases in detail, it may be stated that it finally came to be the law of England and of New York that there was implied promise (assumpsit) on the part of the representative of the deceased to repay the reasonable expense necessarily incurred by a stranger (Rogers v. Price, 3 Younge & J. 28; Brice v. Wilson, 3 Nev. & M. 512; Camp. 298. See Patterson v. Patterson, 59 N. Y. 585, 586, 17 Am. Rep. 384), although there was also some talk in the books about "the estate of the deceased being itself chargeable with such expenses." As at common law there was no recognized conception that an estate of a deceased person, until vested in some one else, was to, be regarded as a kind of artificial person, liable in itself to creditors, such speech as that "the estate itself was chargeable" was at common law oftentimes extremely inexact. The fact that an administrator is, at common law, liable de bonis propriis did not imply it. In the Roman law, "hereditas jacens," or the conception of an intermediate juridical person, supplied on the other hand a deficiency, very apparent in the law of England. The civil law, in fact, furnishes a very complete apparatus when applied to such a case as this, but not so the common law.

The difference in this and other respects between the two systems of law concerning the devolution of an intestate's estate has attracted great attention from those who deal more particularly with legal science and legal theory. But it is unnecessary to refer to such subtleties further than they are illustrative of the legal doctrine, recognized in this state, because the surrogate must apply the law of this state as he finds it laid down either expressly or by implication. All legal liability not raised by statute is due to the common law of the land.

It has been already stated that by the existing law, binding on the surrogate, a stranger, or one not an executor or administrator, can recover the burial expense incurred of necessity, if reasonable, over against the personal representatives of the deceased (in the absence of an express contract) only on an assumpsit, or implied promise, and that the estate is not, as it would be by the Roman law, liable independently as a juristic entity. It was only because of a fear of interference by the Chancery, that assumpsit was in the year 1557 finally applied by the courts of law to executors. Plowden v. Reid, Plowden, 180; Pinchon's Case, 9 Co. Rep. 86b. This simple statement of

the authorities will, I think, be found to be accurate, if the long series of cases is examined in detail.

With this preliminary statement of principles, let us proceed to apply the law of this forum to this particular case. The brother, seeking to recover for the expense of the burial in question, may recover against the widow, who is the administratrix, if at all, only on an implied promise on her part (assumpsit). The theory, underlying such liability and the rule of law indicated, is, of course, immediately referable to the great and historic action of assumpsit, which 'in the course of its development at common law incidentally came near to . turning courts of law into. courts of equity, as it would be iniquitous to hold a man liable on the theory of assumpsit or implied contract, if it was contrary to justice and equity to assume that he did so promise or contract. The theory of assumpsit indicates only one process of development, and is a necessity of a historic system of law which first offered redress by means of established formulæ. Such formulæ still furnish the substantive law of rights of action, even since the Codes of Procedure. The surrogate is, of course, obliged to take up any such formula prescribed for redress precisely as he finds it established by the system of law in.force, and this he ought to do, as every established system of law will be found to be not only obligatory on its courts, but wiser than any single departure from it. Therefore, under the few cases· decided in this state on this subject, it is incumbent on the surrogate to adhere strictly 'to the theory of assumpsit, if he would charge the administratrix in this cause with the liability sought to be established by the brother of the deceased. Now at common law, the theory of assumpsit or implied contract is never applied, when it is unjust, or when the facts found forbid an implication of contract. Buller's Nisi Prius, 130.; Mumford v. Brown, 6 Cow. 475, 477, 16 Am. Dec. 440. And see Stephen on Pleading (Ed. of 1871), 175, 176. In other words, the law vigorously repels the implication of contract in such a case. This synopsis of the existing law permits us to proceed to its application in this particular cause.

[2] The testimony in this matter discloses that the conduct of the brother, now petitioning for repayment, was inconsistent with an intention to seek repayment for the burial. When the body of the deceased arrived in New York, the brother told the widow, now the administratrix, "that he intended to bury her husband without her knowledge, if possible." At the funeral he obtruded himself in the first mourning coach, and told the widow, in substance, that she might go along with him, if she pleased, and that he thought as much of the deceased as did the widow. This view of their relative esteem may be accurate, as it appears that the deceased left a provision for this brother by means of life insurance in his favor, but that he neglected to do the same for his widow. While inconsequential in law, this fact just noticed may, however, account for the disclosure in the testimony that it was the brother who contracted for, and conducted, the funeral in New York. This he did as if there were no widow or no administratrix, and precisely as he would have done had he

himself intended to defray the entire expense of the burial. His conduct at the funeral was not only singular, but most inconsiderate to the widow, who was by established custom the chief mourner on the occasion, and as administratrix the person entitled to regulate the burial. This fact, apparent in the testimony, is only important because it tends to repel any implied promise on the part of the widow to repay the expense of such an arbitrary and singular ceremony as the brother was conducting, evidently from some sentiment of affection peculiarly his own. Does the law under such gross circumstances raise an implication of a promise on the part of the widow to pay for such funeral out of her mean provision? The surrogate is convinced that the law does not raise such an implication of repayment. Matter of Hill, 17 Abb. N. C. 273. The law of the land, in its final application, never tolerates gross injustice. The surrogate is confirmed in this conclusion, and in his view of the principle on which assumpsit lies, by the judgment in Buel v. Boughton, 2 Denio, 91. It is there stated by a former great chief justice of the Supreme Court of this state, Bronson, that "assumpsit is an equitable action which may be defended upon the same equitable principles as those upon which it is maintained." There is probably nothing more subtle or conclusive to be found in the books upon assumpsit, and on that utterance I will let that point rest. It is obvious that in the cause now before me the brother was a mere volunteer, and that no implied assumpsit on the part of the administratrix should be raised by the law in his favor as against her, and 1 so hold.

[3] While an administrator is now allowed on the final accounting reasonable funeral expenses, necessarily incurred, a judgment against him therefor is, in the first instance, still, de bonis propriis, and not be bonis intestatoris. Ferrin v. Myrick, 41 N. Y. 315, 325. Chapter 293, Laws of 1901 (now Code Civ. Proc. § 2729, subd. 3), has not essentially changed this rule, although it has provided the creditor with the mode of obtaining a more speedy payment of funeral expenses in a case clearly within the statute, and in such a case the executor or administrator may defray or discharge the amount so found due out of assets in his hands properly applicable thereto. But in other respects the fundamental principles of the common law have not been changed by such legislation. Such principles remain as before the year 1901.

I come next to consider the question of ratification, apparent in some such cases as this. The widow did not, I think, in any way approve of or adopt the funeral, so as to involve a ratification on her part. In Brice v. Wilson, 8 A. & E. 349, there was an extravagant funeral, ordered by a third person, but the executor ratified it, as was the fact in Lucy v. Walrond, 5 Scott, 46; 3 Bing. N. C. 841; 3 Hodg. 215. But in this cause I detect no such act on the part of the widow as constitutes a ratification or adoption of the funeral by her as administratrix. In the cases I have cited on this point a ratification was always apparent, and the judgment against the executor proceeded on that theory, or on the peculiar facts of the particular case.

[4] But there are other reasons why this application should not be granted. The funeral in New York was not one of necessity, or was it obligatory on any one. The deceased died in Texas, and his removal here was due to a sentiment which, while perhaps very proper and natural from the fraternal point of view, creates no legal liability upon the part of the administratrix. All the cases on this head hold that a third person can recover only such expenses for burial as are necessary. Considering the poorness of the estate, in this instance, and the miserable condition of the widow, there was no necessity for the expensive transport and burial in New York, or for the new casket procured by the brother on the arrival of the body. Affection and respect may well have prompted these things, but not necessity, and without necessity shown there can be no recovery for such expenses. Matter of Walton, N. Y. Surr. Dec., March 30, 1906; Patterson v. Patterson, 59 N. Y. 585, 17 Am. Rep. 384.

Some evidence by way of justification has been directed to the costly way of life of deceased; but, as he left nothing of account behind him, the surrogate ought not to take the way of living of the deceased into consideration. This point is noticed only because the evidence was offered. An extravagant mode of life adds nothing to the real position of a poor man, and, while the expense of the funeral is often determined by position in life, in this case the mode of life should not be taken into consideration.

It is conceded that the applicant received from Texas the sum of $145.93, which he applied on his account now claimed. Strictly he might be accountable over again for even this sum, but I am not inclined to hold him for it, even if I might now do so. There is some authority on this point, to be found cited in 12 Viner's Abridgment, 207, which holds "that if a stranger has goods of a deceased he may dispose of them for the funeral of the deceased." As the petitioner may have acted under a misapprehension in this matter, he should, I think, be allowed the expenditure of the $145.93 already made as not unreasonable. The interment in Texas would probably have cost not less than this sum, and I will allow it, if I can do so, to the applicant, but no more.

The application is dismissed, but the applicant should pay the costs of the stenographer's minutes. Otherwise the parties may go free of costs.

Application dismissed.