are at the natural end of the will, and that the entire writing was properly executed as a will.

All of the writing on the paper propounded will be admitted to probate as the last will and testament of the testator.

Probate decreed.

(88 Misc. Rep. 347)

### In re TIERNEY'S ESTATE.

(Surrogate's Court, Oneida County. December, 1914.)

1. ATTORNEY AND CLIENT (§ 182*) — ATTORNEY'S LIEN — FUNDS SUBJECT — MONEY IN ADMINISTRATOR'S HANDS.

   Money in the hands of an administrator, applicable to a judgment recovered against the decedent, is money in the hands of a third person, to which the lien created by Judiciary Law (Consol. Laws, c. 30) § 475, in favor of the attorney recovering such judgment, attaches.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 315, 399–406; Dec. Dig. § 182.*]

2. ATTORNEY AND CLIENT (§ 180*)—ATTORNEY'S LIEN—NOTICE.

   Where an attorney, seeking to enforce a lien, claims only the costs taxed in a Supreme Court judgment, it is not essential that he shall have given notice of the lien.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 390–392; Dec. Dig. § 180.*]

3. ATTORNEY AND CLIENT (§ 184*)—SALE OF REALTY—PROCEEDS—ATTORNEY'S LIEN—FUNERAL EXPENSES—PRIORITY.

   Where intestate leaves no personalty, the administrator must first pay from the proceeds of realty the reasonable expenses connected with the administration, then pay the reasonable funeral expenses, and then apply the remainder, if any, as directed by Code Civ. Proc. § 2729, except that the lien of the attorney of a judgment creditor of deceased in the amount established by the decree for the sale of the realty must be paid, with interest, before such proceeds are applied on judgments as provided by subdivision 3.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 388; Dec. Dig. § 184.*]

Proceeding on the judicial settlement of the accounts of Joseph J. Tierney, administrator of the estate of Patrick J. Tierney, deceased. Decreed according to opinion.

John S. Baker, of Rome, for petitioner.
Thomas J. McNamara, of Rome, for John Viscosi.
Albert J. O'Connor, special guardian, of Rome, for Arla Williams and Mary Tierney.
D. Francis Searle, of Rome, for himself and Clinton W. Searle.
Stoddard M. Stevens, of Rome, for Beach Lumber Co.
John E. Mason, of Rome, for City of Rome.

SEXTON, S. Letters of administration were issued on this estate to Catherine Tierney May 29, 1911. She having thereafter died, on January 31, 1914, letters of administration were issued to her son, Joseph J. Tierney, who is now before the court for a judicial settlement of his account as such administrator. The only money in his

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hands is $869, having come from the sale of real estate. The total liabilities are approximately $2,814.70. Because of the insolvency of the estate, a contention among the creditors as to priority of payment of their claims has arisen.

On February 24, 1908, Maria and Augustino La Monica and Costanza Erasmo recovered judgment against the deceased in the Supreme Court for $996.19. D. F. Searle was the attorney of record. Assignment of this judgment to John Viscosi was filed December 20, 1910. On February 24, 1908, a judgment was docketed against deceased, and in favor of Maria and Augustino La Monica jointly with said John Viscosi, for the sum of $685.69, which was thereafter assigned to Clinton W. Searle, an attorney of Rome, N. Y., and a son of said D. F. Searle. The decree of sale contained the following:

"D. Francis Searle, costs allowed on judgment in above action in the amount of $110.03, with interest thereon from February 24, 1908, $39.61. Total, $149.64."

[1] In objections to the account Mr. Searle asserts his lien for costs included in said Supreme Court judgment. No evidence was given on the subject, but the decree having fixed the amount of the costs, in a statement separate from the damages, the court is bound thereby. We are dealing with taxed costs only. The attorney's lien for the costs as taxed attached upon the rendition of the judgment (Bevins v. Albro, 86 Hun, 590, 33 N. Y. Supp. 1079; Pulver v. Harris, 52 N. Y. 73), and permeates the entire judgment, as well as the proceeds thereof, into whosoever's hands they may come. Judiciary Law, § 475. The language of this section creates a lien in favor of the attorney on his client's cause of action, and enables him to follow the proceeds into the hands of third parties. Peri v. New York Central R. R. Co., 152 N. Y. 521, 46 N. E. 849. Hence any money in the hands of an administrator, applicable to a judgment recovered against the deceased, is money in the hands of a third person to which the lien of the attorney recovering said judgment attaches, and to the extent of such lien.

[2] No lien is claimed for any services rendered in this court; hence the point is made that proof should have been given of the lien, or some notice that such a claim was to be made. Only costs as taxed in a Supreme Court judgment are claimed by the attorney. So far as concerns the recovery of an attorney's costs, the judgment itself is notice; but if he would enforce his lien further, and recover for his services beyond taxable costs, actual notice of the lien must be given. Marshall v. Meech, 51 N. Y. 140, 10 Am. Rep. 572.

[3] The remaining question is as to whether an attorney's lien and judgments of record shall be paid by the administrator before the funeral bill; it being contended that where there is no personal property, and proceeds of real estate only are to be distributed, then a judgment of record must be given priority in payment over funeral expenses. To hold that the lien of a live attorney or judgment creditor should be paid before the expense of interment of decedent might lead to embarrassment in insolvent estates, and would be in contravention of law and public policy.

Civilization from the earliest days has provided for the burial of the dead. History deals with the tombs of the antediluvian worthies, Abel, Seth, Noah, and Ham. Sheikh Mohammed grew rich by representing to the passing public the tomb of an ass as that of a noted saint. Even animals have recognized the beneficence of such a custom. It is recorded that, when Paul the Hermit died, two lions issued from the desert to dig his grave, uttered a long howl of mourning over his body, and then departed.

The general tendency of mankind has always been to bury the dead out of the sight of the living. Amongst the ancients an unburied body was held to be disgraced, and the spirit was unhappy until a kindly stranger at least threw a few handfuls of earth on the corpse. Long before the Pilgrim Fathers began to worry, work, freeze, and sweat upon our shores, the common law of England gave to every person the right to be buried in his parish church yard. In England the common law cast the duty of burying the dead upon the person under whose roof the death occurred. Scott v. Riley, 40 Leg. Int. 382.

In Blackstone's time, English civilization had reached a point where the law required an executor or administrator to bury the deceased in a manner suitable to the estate which he left behind him. "Necessary funeral expenses are allowed previous to all other debts and charges." Sharswood's Black. Comm. vol. 1, book 2, p. 508. In the United States, neglect to bury a dead body by any one whose duty it is to bury it, and having sufficient means to do so, is a misdemeanor. Section 306 of the Penal Code provides:

"Except in the cases in which a right to dissect it is expressly conferred by law, every dead body of a human being lying within this state, must be decently buried within a reasonable time after death."

The dead having a legal right to be buried, and it being a misdemeanor not to bury a dead body, and it being the duty of a person under whose roof one dies to see that burial is given, it must be the law contemplated reimbursement therefor. Where the owner of some estate dies, the duty of the burial is upon the executor or administrator.

In the case at bar there is some estate; hence it is the administrator's duty to take a reasonable portion of that estate to compensate the undertaker for the burial of the dead body, or whoever paid the undertaker for such services. There is no doubt but that the reasonable and necessary expenses of interment of the body of one deceased are a charge against his estate, though not strictly a debt due from him, and this is based upon the general right of every one to decent burial after death, which implies the right to have his body carried, decently covered, from the place where it lies to a cemetery or other proper inclosure, and there put under ground.

"To a claim for the payment of such expenses by an executor, the objection does not lie that the rule of distribution of assets will be improperly interfered with if the claim is allowed and paid. Unless there is some objection arising out of statutory provisions, these expenses must be preferred to all other debts, * * * not excepting debts due by record, even to the sovereign." Patterson v. Patterson, 59 N. Y. 574, 17 Am. Rep. 384.

A funeral bill is classed the same as the expenses of probate and other expenses of administration, and must be first paid out of the estate, and this has long been the law of this jurisdiction.

"In paying the debts, the order prescribed by the rules of common law is to pay, first, funeral charges and the expenses at the probate office, next, debts due to the state; then, debts of record, as judgments, recognizances and final decrees," etc.  2 Kent, Comm. (Lacky's Ed.) 416.

Without attempting to cover the evolutionary period of the common and statutory law from Kent to the present Code of Civil Procedure, I call attention to section 2729 of said Code, subdivision 3, which provides in part as follows:

"Every executor or administrator shall pay, out of the first moneys received, the reasonable funeral expenses of decedent, and the same shall be preferred to all debts and claims against the deceased," etc.

This section enables the undertaker to force payment of his claim within 60 days after the grant of letters testamentary or of administration, provided there is in the hands of the representative of the estate sufficient money applicable thereto.  No such remedy is furnished any other creditor or claimant, indicating clearly that a funeral bill is the first claim to be paid, except expenses of administration. Said section further provides:

"If upon any accounting it shall appear that an executor or administrator has failed to pay a claim for funeral expenses, the amount of which has been fixed and determined by the surrogate as above set forth, or upon such accounting he shall not be allowed for the payment of any debt or claim against the decedent until said claim has been discharged in full; but such claim shall not be paid before expenses of administration are paid."

From the foregoing provision, it seems clear that a representative of an estate shall first husband sufficient of the estate to pay administration expenses, such as procuring his appointment, his commissions, and expenses of accounting, and whatever is left, if any, shall be next used to pay "the reasonable funeral expenses of decedent"; and section 2719 of the Code applies only to the amount then undistributed.

It is claimed by the objectors that the directions in said subdivision 3 of section 2729 of the Code to the executor or administrator to pay out of the first moneys received the reasonable funeral expenses, etc., means moneys received from the sale of personal property, and not from the proceeds of the sale of real estate encumbered by judgments. An examination of subdivision 3 of said section of the Code to my mind does not disclose any such intention on the part of the enacting power, in view of the language used, the direction being that "out of the first moneys received." It does not say, "out of the first moneys received from personal property," and the executor or administrator is not limited to moneys received from personal property, but must pay out of whatever moneys he has in his hands belonging to the estate, whether realized from the sale of personalty or realty.

Bearing upon this point, we have section 2761 of the Code which requires the executor or administrator to—

"apply the proceeds of the real property mortgaged, leased or sold in the same manner as if he had acted under such a power of sale contained in a will and all persons interested in the execution of the decree shall have the same remedies for the enforcement of the decree and the application of the proceeds that they would have had if the executor or administrator were acting under such a power."

Can it be said that an executor, who sold real estate under a power of sale contained in a will, could refuse to pay the funeral expenses of the testator because the estate was without personal property, or that an undertaker would not then have the 60-day remedy provided for in section 2729 of the Code, or that his application would be denied upon proof that the only proceeds in the hands of the executor, be they much or little, were realized from the sale of real estate, and that the court would be without power to direct the application of the same to the payment of funeral expenses? To my mind no such intention can be gathered from either of said sections, nor is any such intention inferable from any other section of the Code.

In further support of the contention that it was not the intention of the Legislature to prefer judgments above funeral expenses, and that a funeral bill is not a debt, but an expense of administration, we have section 2719 of the Code, which directs every executor and administrator to pay the debts of the deceased in the following order:

"1. Debts entitled to a preference under the laws of the United States.

"2. Taxes assessed on the property of the deceased previous to his death.

"3. Judgments docketed, and decrees entered against the deceased according to the priority thereof respectively."

The burial of the dead out of the estate before payment of attorney's or judgment creditors' liens is a proposition long supported by common custom, common decency, common sense, common law, and statutory enactments.

I therefore hold and decide that the administrator must first pay out of any moneys in his hands his reasonable expenses connected with the administration of the estate; second, the reasonable funeral expenses for the interment of the deceased, so far as the remainder of the money in his hands will pay the same; and that any money then remaining shall be applied in the order as directed by section 2719 of the Code of Civil Procedure, excepting that the lien of attorney D. F. Searle shall be paid, with interest, in the amount established by the decree of sale, before any of said proceeds are applied, as provided by subdivision 3 of section 2719 of the Code. The Goldbas judgments were not established and are disallowed.

Decreed accordingly.