In the Matter of the Estate of VINCENT GUARNERI, Deceased.

Surrogate's Court, Kings County, December 22, 1933.

*Rumsey & Morgan*, for the City Bank Farmers Trust Company, as executor, etc., of Vincent Guarneri, deceased.

*John J. Bennett, Jr., Attorney-General [Joseph A. McLaughlin, Assistant Attorney-General,* of counsel], for the Industrial Commissioner.

*Latson & Tamblyn*, for the Holy Cross Cloister, Inc.

*Geis, Forman & Schulze*, for Julius Fehlhaber.

*Giaccone & Richard*, for Pietro Coluccio Michetto, a claimant.

WINGATE, S. The question herein presented possesses more than usual interest by reason of the fact that, so far as reported cases disclose, it has only once previously arisen in the legal history of the State. A substantially identical situation arose before the surrogate of Oneida county in December, 1914, but no appeal was prosecuted from his decree. It follows, therefore, that in the absence of binding adjudication, the subject is open for independent examination by this court. (*Matter of Cohen,* 147 Misc. 570, 572.)

Testator died on June 9, 1931, and his will was probated and letters testamentary were issued to the predecessor of the present corporate fiduciary one month later.

At the time of his death the testator was seized of seven parcels of real estate, all subject to sizable mortgages, the combined equities of which are asserted to have aggregated $40,700. His only personal assets which have proved to have had any value consisted of a note secured by the pledge of a diamond ring, upon which $292.15 has been realized, and the fixtures and stock on hand in his place of business, for which a total of $265 has been received. Obviously. the aggregate of personal property amounts to only $557.15.

On the debit side of the ledger the account lists $2,800 for funeral and administration expenses, a balance of $14,840.19 for judgments recovered and docketed against the decedent prior to his death, $39,045.08 of admitted claims, and $22,745.19 of rejected claims, showing a grand total of filed claims and expenses of $80,430.46, and conceded obligations of $56,685.27.

To increase the gloomy aspect of the picture, it appears that the most valuable parcel of real estate has been lost through foreclosure, entailing a reduction in apparent assets of $20,000; that

taxes and mortgage interest are in substantial arrears with other foreclosures and possible deficiency liabilities threatened, and that the total cash in the hands of the executor amounts to only $344.56.

In view of this hopeless insolvency of the estate, the sole controversy lies between the holders of obligations for funeral and administration expenses and creditors. Further, since the total hypothetical assets in the hands of the executor amount to only $21,044.56 as against which claims are asserted for funeral and testamentary expenses of $2,800, and on judgments recovered during decedent's lifetime for $14,840.19, with interest from October 17, 1930, and $200, with interest from June 15, 1931, it is apparent, in view of the situation of the estate, that the real conflict is between the claimants for funeral and testamentary expenses on the one hand, and the judgment creditor on the other. Each asserts a right to priority in payment and this is the sole question upon which a present determination is requisite.

The facts respecting the judgments are not in dispute. They were recovered by the Industrial Commissioner of the State of New York as a result of the injury to and death of an employee of the decedent, the latter having failed to obtain workmen's compensation insurance. These judgments were, as stated, recovered and docketed against the decedent in his lifetime. The larger was originally for $18,240.19, but payments amounting to $3,400 have been made on account, leaving the present balance.

The Attorney-General asserts the right of the State to a primary preference in payment so far as the real estate is concerned, by reason of the provisions of section 510 of the Civil Practice Act, and in respect to the personalty, under section 34 of the Workmen's Compensation Law. The executor, on the other hand, bases his argument for priority for funeral and administration expenses on sections 212, 216, 222 and 285 of the Surrogate's Court Act.

Since the judgments were recorded against the decedent in his lifetime, it is obvious that this operation effected a lien against real property then and subsequently owned by him, by reason of the provisions of section 510 of the Civil Practice Act. This reads: " Except as otherwise specially prescribed by law, and except also as in this and the next section provided, a judgment wholly or partly for a sum of money or directing the payment of a sum of money, hereafter rendered, which is docketed in a county clerk's office, as prescribed in this chapter, binds, and is a charge upon, for ten years after filing the judgment roll, the real property and chattels real, in that county, which the judgment debtor has at the time of so docketing it, or which he acquires at any time afterwards, and within the ten years."

The effect of this section is clearly stated in *Hulbert* v. *Hulbert* (216 N. Y. 430, at p. 440): " Whatever the legal effect of the early statutes may have been it is perfectly clear that since 1813 the judgment itself is a lien upon the real property of the debtor. The legal effect of this statutory rule is that from the moment a judgment is duly filed and docketed legal rights in the real estate of the debtor attach."

Again (at p. 434): " When the judgment is a lien upon the land, it is not necessary that the sheriff should make any formal levy or seizure before proceeding to advertise and sell. It would be an idle ceremony for him to go to the land, or make an inventory of it, or do any other act of the like nature. The judgment binds the land, which is already in the custody of the law before the execution issues. The execution comes as a power to enable the creditor to reap the fruits of the seizure already made."

Being a legal lien upon the land, it is somewhat difficult to see in what respect the rights of the holder of a judgment differ from those of other legal lienors, as, for example, those of a mortgagee. This, the accountant does not attempt to elucidate. It apparently concedes that the claim of the mortgagee takes precedence over that of the undertaker, yet it is firmly established that if the judgment had been docketed prior to the giving of the mortgage, the latter would be postponed to the former (*Cook* v. *Banker*, 50 N. Y. 655; *Dwight* v. *Newell*, 3 id. 185, 188); that judgments and mortgages are to be paid from the proceeds of the sale of the realty in respect to which their liens attach in the order of their priority (*Haines* v. *Beach*, 3 Johns. Ch. 459, 467), and that any claim to land arising after the docketing of a judgment cannot be allowed precedence to its lien. (*Goodhue* v. *Berrien*, 2 Sandf. Ch. 630, 634.) Even in bankruptcy the lien of a judgment against realty is not to be avoided unless its perfection was accomplished within four months of the filing of the petition. (*Hillyer* v. *Le Roy*, 179 N. Y. 369, 375.)

A judgment creditor is not a purchaser for value, wherefore the judgment attaches only to such rights as the judgment debtor owns at the time of its entry. (*Sullivan* v. *Corn Exchange Bank*, 154 App. Div. 292, 296.) It follows, therefore, that an " equitable claim on land which existed prior to the recovery of the judgment is given preference over judgments docketed afterward; but in no case is that preference given where the equitable right did not exist prior to the recovery of the judgment." (*Cook* v. *Kraft*, 3 Lans. 512, 516.)

In the usual case the fiduciary of a decedent estate receives possession of or control over no property which was not owned

by the decedent at the time of his death, and such property or rights which come to him are received in the same plight in which they were possessed by the decedent. (See *Matter of Killough*, 148 Misc. 73, 86.) It is primary that the decedent whose real property is subject to the lien of a judgment cannot convey it other than subject thereto in default of discharge thereof (*Holland* v. *Grote*, 193 N. Y. 262, 266, 267), and there is nothing in the law which authorizes him to convey a better title by operation of law at his death than he could have given by conveyance during his life.

Both mortgages and judgments are liens upon the land. Barring rights of *bona fide* purchasers for value, mortgagees and judgment creditors bear the self-same relations to the land upon which their incumbrances are liens. It follows, therefore, that estate fiduciaries receive the realty of their decedents subject to such liens and nothing but the excess equity ever comes into their hands or subject to their administrative powers. (*Baucus* v. *Stover*, 24 Hun, 109, 115; revd. on other grounds, 89 N. Y. 1; cited with approval and applied in *Matter of Mercantile Trust Co.*, 210 id. 83, 87.) (See, also, *Matter of Mercantile Trust Co.*, *supra*.)

As pointed out in the foregoing quotation from *Hurlbert* v. *Hurlbert*, the docketing of the judgment substantially effects a seizure of the land and its deposit *in custodio legis*. It follows, therefore, that the result of such seizure is precisely identical with that which is effected in respect to personal property by the institution of a judgment creditor's action. This makes presently applicable the reasoning and statement of principles applied in *Brown* v. *Nichols* (42 N. Y. 26), in which the court says (at p. 30): " Aside from the effect the Revised Statutes may have upon the subject, it will not be questioned that the lien the judgment creditor gets by virtue of the commencement of his equitable suit would survive the death of the debtor. (*Storm* v. *Waddell*, 2 Sand. Chan. 494.) The property then passes to the personal representatives charged with this lien. The assets are subject to this lien, and the debts of the debtor are to be paid out of them after this lien, like any other legal lien, has been first satisfied. It seems to me that the provisions of the Revised Statutes (2 R. S. 88, § 27), as to the order in which debts of a deceased debtor are to be paid, have nothing whatever to do with this question. This provision does not define what are assets, nor how liens upon the assets are to be discharged, but it directs the order in which the net assets, that is, the property of the debtor remaining after liens have been discharged, shall be applied in payment of his debts."

It is entirely true that section 216 of the Surrogate's Court Act directs the payment of the reasonable funeral expenses of decedent " out of the first moneys received," but no moneys can be received by the estate fiduciary from real estate except after the payment, either by direct solution or allowance for the valid liens thereon. (*Baucus* v. *Stover, supra; Matter of Mercantile Trust Co., supra; Matter of Horner*, 126 Misc. 772, 773.) *Matter of Tierney* (88 Misc. 347) contains an interesting review of burial customs from the days of " Abel, Seth, Noah and Ham " to date. The court fully concurs in the statements therein made respecting the public interest involved in the burial of the dead. There is no argument required to carry conviction for the thesis that public policy requires decent interment for human remains. The court is, however, unconvinced of the existence of any public policy which compels or permits it to apply the assets of an utter stranger for this purpose. Such would be the effect of sustaining the contention of the executor in the present case.

It is presently unnecessary to decide whether funeral expenses do or do not take precedence over administration expenses and commissions of the fiduciary. Any of these are payable by him solely from the assets of the deceased, and the only interest which testator possessed in the realty in question was its equity above the mortgages and judgments which were liens thereon at the time of his death.

The court cannot, however, accede to the position of the Attorney-General in respect to his claim for an overriding lien against the personalty of the estate. The applicable statute in this regard which was in force at the time of the accident, the recovery of the judgment and the date of testator's death, was section 34 of the Workmen's Compensation Law which then read: " Compensation shall have the same preference or lien against the assets of the carrier or employer without limit of amount as is now or may hereafter be allowed by law to the claimant for unpaid wages or otherwise."

The altered wording upon which reliance is placed was accomplished by chapter 248 of the Laws of 1932 and did not take effect until March seventeenth of that year, seventeen months to the day after the recovery of the larger judgment and approximately ten months after the death of decedent. Since by that time rights of others in his general assets had accrued, the amendment cannot be given retroactive effect and in this respect the judgment creditor is remitted to the rights given under section 212 of the Surrogate's Court Act.

The executor seeks " advice and direction " in respect to its

conduct of the realty. In view of the foregoing definition of its rights therein, such advice appears superfluous, since the fiduciary is precisely in the position of a vast army of owners of like property subject to a succession of incumbrances. As a primary matter, however, it would seem unwise to sit idly by and permit all of the assets of the estate to be dissipated by foreclosure proceedings if any equity in the realty actually exists.

Any further questions in connection with this accounting may be brought on for hearing by any interested party on usual notice.

Proceed accordingly.