In the Matter of the Estate of DOROTHY I. HORN, Deceased.

Surrogate's Court, Monroe County, April 26, 1934.

*C. T. Taggart,* for the petitioner.

*L. R. Roche,* for the administrator.

FEELY, S. The petitioner seeks to collect from the estate of a married woman, in the hands of her husband as administrator, a bill of $578 for the expenses of her funeral. Her personal property consisted of a bank deposit of $153.80, and $91 realized from the sale of her beauty-shop equipment. She also was the record owner of an equity in a lot and house in the suburbs of Rochester, which was the home of this couple. It was assessed for $3,000, carrying a first or bank mortgage of $2,000, and a second mortgage of $1,400, held by her husband. This equity has little or no present value. The contents of the house and her personal effects would not exceed the value of exempt property.

The husband claims he was excluded by his wife's relatives in the ordering of the funeral; and also that, by reason of their unsuccessful attempt to revoke his letters of administration, legal services were incurred which brought the bill for all services to the estate up to the sum of one hundred and fifty dollars; that ten dollars is due for the premium on his bond; and that these are administration expenses that are preferred to the funeral bill. Preference is also claimed, on the score of preserving assets, for fifty dollars interest paid the bank; forty-two dollars and nineteen cents for taxes levied in her lifetime; forty-eight dollars paid for rent of the shop to obtain possession of the equipment; and forty-two dollars and seventy cents balance due on the purchase price thereof; and that most of these items were paid out of his own money.

At the time of her death, her relatives, between whom and the husband great ill-feeling existed, came into the house with the petitioner, an undertaker of Lyons, N. Y., whom they had engaged, and took complete control of the funeral. The husband testified that to avoid raising a disturbance at such time he did not insist on calling in another undertaker whose services he had bespoken a few days previously, when the wife's pulmonary tuberculosis showed signs of entering the final stage, in September, 1933. The petitioner testified that he and the husband were merely introduced, and did not talk business; but that later, while the husband was on another floor of the house, the wife's relatives made the arrangements with the petitioner, informing the petitioner there had been a divorce obtained by the wife against the husband. His name was omitted from the published notices of the death and funeral. The petitioner also testified that he did not look to the husband; but that for the service he was about to render he extended credit

to the estate, which the wife's relatives said to him she had. In the husband's absence, the wife's relatives selected the casket, which with services is charged at $450, together with a metal vault at $100 and other minor items. They also directed interment to be made in their family lot at Lyons, N. Y. The husband was present in the home at the ceremonies, and at the interment.

Three days later letters of administration issued to the husband on his allegation that he was the husband of the deceased. This increased the bad feeling to the point that her relatives moved to revoke the letters, but were defeated. It was true that there had been a divorce; and apparently pending that action the title to the home was changed over from an entirety to the wife's name alone, and she gave the husband the $1,400 second mortgage in October, 1930. The final decree was awarded the wife on January 16, 1931; but this couple continued thereupon to cohabit openly in the same home as husband and wife for nearly three years, in such circumstances that this court decided on October 23, 1933, that after such decree of divorce they had remarried each other by a non-ceremonial consent.

It seems clear that, on those facts, no personal liability was incurred by the husband for the funeral, either by consentual contract, or on the theory of a " necessary " furnished in his neglect (*Matter of Moran*, 75 Misc. 90; *Quinn* v. *Hill*, 4 Dem. 69, 70; and see *Matter of Wingersky*, 75 Misc. 79, and *Watkins* v. *Brown*, 89 App. Div. 193); nor was he under the former statutory liability as a husband inheriting her estate (*Romig* v. *Sheldon*, 124 N. Y. Supp. 26, 28; affd., 142 App. Div. 925), because her death occurred since the repeal of section 103 of the Decedent Estate Law on September 1, 1930. Otherwise, he might be bound to bury his wife; but in that case he would be entitled to reimbursement from any estate she might leave. (*Matter of Stadtmuller*, 110 App. Div. 76.) It follows that, as her administrator, the husband could not, on the facts of this case, be required to pay out of her estate anything more than the reasonable value of the necessary charges for burial, in keeping with her station in life and with the apparent amount of her estate. (*Matter of Moran*, *supra*.) The objection to buying a vault worth $100 is well founded in this case to a large extent; and to some extent also the extra expense of interment at a point distant from the home in Rochester, although it saved the cost of a local grave. Against an estate of about $244.80, then, is a funeral bill of about $450. It is immaterial that the husband's second mortgage was not recorded until after the funeral; because no credit was ever extended to him for it, nor was any inquiry made at the time of the funeral in respect of the value of his wife's equity

in the home place. For the present, it suffices to say that the funeral, as a charge against this estate, was reasonably worth more than the $244.80, whatever may have been its value as respects the two persons, the sister and brother of the deceased, who gave the order for it to the petitioner. (*Ruggiero* v. *Tufani*, 54 Misc. 497; *Hoffman* v. *Kanze*, 7 id. 237; *Huhna* v. *Theller*, 35 id. 296.)

This case falls within the exception made in 1932 in subjecting the money exemption, if needed, to funeral expenses (Surr. Ct. Act, § 200, subd. 4); so, the only question remaining is the claim that the expenses of administration must first be paid before anything can be paid on the funeral bill.

Several *obiter dicta* — one of them apparently correcting another — are found in the reports. In January, 1931, in the course of a helpful general survey of the order in which payment is to be made of claims of various kinds against an estate, it is said that the order is to pay, first, the funeral expenses; and second, the ordinary and necessary expenses of administration (*Matter of Smallman*, 138 Misc. 889, 910, 916); but in October, 1933, the same court said, in passing: " While the reasonable funeral charges are preferred over all obligations of the decedent existing at his death, they are not entitled to priority over expenses of administration." (*Matter of Lanza*, 149 Misc. 95, 98.) As authority for this, the court there cited *Matter of Tangerman* (226 App. Div. 162, 164), where the court, dealing merely with a matter of offset, said in passing: " The funeral expenses, while not strictly a debt of the decedent, are preferred for payment to all debts and claims against the deceased and shall be paid out of the first moneys received, subject only to the expenses of administration. (Surrogate's Court Act, § 216.) "

This section 216 originated when chapter 293 of the Laws of 1901 added a new subdivision, numbered 3, to section 2729 of the Code of Civil Procedure, in language that appears to be correctly summarized in the quotation just made from the *Tangerman* case.

Before this amendment the common-law rule applied, to " pay all funeral charges, and the expense of proving the will, and the like. Secondly, debts." (*Matter of Stiles*, 126 Misc. at p. 717; 2 Kent Comm. 416, quoted in *Matter of Tierney*, 88 Misc. 347, at p. 352.) This rule was held in some States to place these two threshold expenses on a parity (*Snyder* v. *Thieme, etc.*, [Ind. App.] 87 N. E. 155; affd., 173 Ind. 659; 90 N. E. 314), while other States interpreted their statutes so as to award priority to the funeral expense (*Bert* v. *Spooner*, 4 Ky. L. 602; 24 C. J. 423).

No priority could be spelled out of the common-law formula

other than by arguing that the first named should be the first served. As to our statute, FOLGER, J., observed: " Though our Statute of payment of debts and legacies (2 R. S. p. 87, § 27) gives the order in which the executor shall make payment of debts against the estate, and though there is no provision there for a priority of payment of funeral expenses, it is not to be held therefrom that the common-law rule is abrogated. * * * The expenses of probate of will precede the formal authority to the executor, but are allowed to him on an accounting. So should the funeral expenses be." (*Patterson* v. *Patterson*, 59 N. Y. 574, 585.) The priority, if any, between the two remained unexpressed, and this occasionally caused trouble. Before the amendment of 1901 I was in court when one of my predecessors on this bench decided an argument between the attorney for the estate and the funeral director by dividing an estate of eighty dollars equally between the two, to the dissatisfaction of both. Since the amendment of 1901, this point of priority has come squarely in issue in only two cases — so far as I have discovered — and the ruling in each was that this legislation preferred the expenses of administration to those of the funeral. (*Matter of Kunkler*, N. Y. L. J. Oct. 20, 1914; *Matter of Tierney*, 88 Misc. 347.) In the case last cited, the surrogate, citing section 2729 of the Code of Civil Procedure, said: " It seems clear that a representative of an estate shall first husband sufficient of the estate to pay administration expenses, such as procuring his appointment, his commissions and expenses of accounting, and whatever is left, if any, shall next be used to pay ' the reasonable funeral expenses of the decedent; ' and section 2719 of the Code [now section 212 of Surrogate's Court Act] applies only to the amount then undistributed." He further ruled that the direction to pay the funeral " out of the first moneys received," was not limited to personal property, but was intended to include whatever was realized from a sale of the real property also.

One recent opinion, however, lays greater stress on this direction to pay for the funeral " out of the first moneys received; " and appears in its argument or opinion, at least, to contradict the *Tierney* case, which, by the way, was decided by a predecessor in the same court, the well-known former Surrogate SEXTON.

While, indeed, the first sentence of the statute (Surr. Ct. Act, § 216) does direct that " every executor or administrator shall pay out of the first moneys received the reasonable funeral expenses of the decedent, and the same shall be preferred to all debts and claims against the deceased," still this must be read together with the closing words of the same section, " but such claim shall not be paid before expenses of administration are paid." This final

clause, however, has been said — *arguendo* as I see it — to have " no application to an admitted claim for funeral expenses." (*Matter of Williams*, [1932] 143 Misc. 527.)   In the case just cited testator left three sons, one of whom, named Hugh, being a funeral director, buried the deceased at an unquestioned expense of $433; whereas when the estate came on for settlement the executor had on hand only $344.35.   At the outset the executor had brought a contract action against Hugh on the allegation that $2,600 was due from him to testator; but there seems to have been something very seriously defective in that alleged cause of action, because the dismissal of the complaint in County Court was affirmed not only in the first review, but also on a permitted appeal to the court of last resort.   Thereupon the executor was ordered to pay costs of his unsuccessful second and third attempts to increase the assets of the estate; and the judgment for costs was assigned by Hugh to the surety company which gave the undertakings on the appeals.   These costs were claimed by the surety company to be part of the administration expenses and entitled as such to preference over the funeral bill.   The surrogate held they were not to be so preferred; and I think he was correct in principle in so ruling; but the reasons he gave for so ruling I cannot reconcile either with the statute itself, especially as amended in 1933, or with the cases above cited.   He might well have said that these costs were " plus æquo," that is, beyond the " ordinary and necessary expenses of administration; " that the case had been unduly pressed; that the costs were the result of an effort that had failed to benefit the estate; and that the effort should have been so recognized, especially after the ruling in County Court.   Had the executor stopped there, and not risked the two costly appeals, I dare say the County Court costs might well be deemed to be a necessary and justifiable expense of administration; and as such entitled to preference over the funeral bill.   Only in so far as administration expenses are reasonable and necessary are they entitled to be paid before the funeral bill is paid out of the estate.

In the case at bar, fully half the $150 bill for legal services was caused by the attempt of the wife's relatives to revoke the letters that had been granted to one whom the divorce had led them to believe was only an ex-husband of the deceased; but they had moved ahead without any investigation or inquiry whatever, in ordering the funeral, as they did, and also in moving to revoke his letters when they well knew he and the deceased had openly cohabited after the divorce for nearly three years prior to her death; so that the expense they so brought about was more their fault than his, and cannot now be claimed excessive by them with a view

to lightening the burdens they assumed as aforesaid; for that is what it would amount to, if the undertaker be said to have had no part in their doings. His testimony is that they engaged him; and he extended credit to the estate; and if the estate has been lessened by their unsuccessful attempts, the fault cannot be laid at the door of the successful administrator.

The ten dollars paid for the bond premium is also a necessary expense, as is also the forty-eight dollars and the forty-two dollars and seventy cents paid to retrieve the shop equipment, out of which the ninety-one dollars was realized.

There are, therefore, no " moneys belonging to the estate which are applicable to the payment of the claims for funeral expense " (Surr. Ct. Act, § 216); but the fact that there are not " sufficient moneys in the hands of the administrator to pay the administration expenses and the reasonable funeral expenses " (Surr. Ct. Act, § 216) is no bar to this petitioner proceeding against whatever equity, if any, there may be in the real estate. (Surr. Ct. Act, § 234, subd. 2.)

Enter a decree in accord with this decision.