## In the Matter of the Estate of Jacob F. Healey, Deceased.

Surrogate's Court, Kings County, December 3, 1936.

*Mitchell, Taylor, Capron & Marsh*, for the City Bank Farmers Trust Company (formerly known as The Farmers' Loan and Trust Company), petitioner, as substituted trustee of the trust created for the benefit of Georgie E. Bayless by the sixth clause of the last will and testament of Jacob F. Healey, for the judicial settlement of its account and for a construction of the said will.

*Walter & Austin* [*Thomas G. Prioleau* and *Charles C. Austin* of counsel], for the objectants, Flora M. Healey, widow, and Bayless L. Healey and Warren M. Healey, sons of Frank F. Healey, deceased.

*Frank M. Hays*, for Stanley C. Bayless, as executor, etc., of Georgie E. Bayless, deceased (daughter of decedent).

*Coombs & Wilson* [*Robert H. Wilson, Jr.*, of counsel], for Thayer L. Healey, as ancillary administratrix c. t. a. of Alice L. Campbell, deceased (daughter of decedent).

*Carter, Ledyard & Milburn*, for Russell H. Lucas, as administrator, etc., of Grace W. Lucas, deceased (daughter of decedent).

WINGATE, S. Although the question here presented is nominally one of testamentary construction, the real issue concerns the validity and effect of a certain agreement executed on April 4, 1916. Shorn of superfluities, the question is, in essence, propounded as to whether a competent adult person who voluntarily enters into an agreement, untainted by fraud or undue influence, and receives and enjoys the material consideration provided therein for upwards of a score of years, may, at the end of that time, repudiate the agreement and be relieved of the obligations therein assumed by him without a return of the consideration which he received.

Jacob F. Healey died on August 8, 1915, survived by four adult daughters and an adult son as his sole heirs at law and next of kin. His will, which was admitted to probate in this court on September 4, 1915, directed that substantially his entire estate be erected into a series of trusts for his daughters. He bequeathed a legacy of $1,000 to the son and directed the cancellation of all evidences of indebtedness of the latter, stating that they should be considered advancements to him. The testator elucidated the reasons motivating this manner of disposition of his estate, stating in the ninth item of the will: " I am not unmindful of my son Frank F. Healey, and I do not exclude him through any ill feeling or feeling of displeasure with him, but for the reason that I have already made substantial advancements to him, and I wish especially to care for the welfare of my daughters and the survivors or survivor of them."

In spite of this elucidation of the parental wish, the son felt aggrieved at the terms of the will and seriously contemplated the institution of an action for the revocation of its probate. Negotiations between the parties looking to an amicable settlement of the controversy ensued and these culminated in an agreement bearing date the 4th day of April, 1916, which was duly executed, acknowledged and delivered by the son, the four daughters and the executors of the estate. By this instrument the son, in return for the sum of $5,975, then paid to and received by him, released all claims or causes of action for the revocation of probate or to determine the validity of the will, and accepted the sum thus paid him in full of all claims against the estate with a single exception, which read as follows: " This agreement is made with the understanding on the part of all of the parties hereto that in case the said Frank F. Healey should survive all of his sisters, he would be entitled to a one-fifth (1/5) interest in that part of the said Jacob F. Healey's estate which was undisposed of by the said will, and it is not intended by this agreement that he shall release any interest which might come to him through the happening of such contingency, but that in case that contingency shall happen and the said Frank F. Healey does survive all of his said sisters, he shall be entitled to the same share in the undisposed of property belonging to the estate which he would have received had this agreement not been made, *the said Five thousand nine hundred seventy-five Dollars paid out of the estate to him under this agreement to be charged against him as a payment on account of any amount which may become payable to him upon the happening of the said contingency,* but interest shall not be charged against him on said sum of Five thousand nine hundred seventy-five dollars in applying the same upon the share which may become payable to him under such circumstances." (Italics not in original.)

The contingency envisaged in the exception has eventuated. Frank F. Healey survived all his sisters and, by reason of a failure of the dispositive directions of the will, the remainder of the trust erected by its sixth item passes as intestate property. The value of this remainder, exclusive of deductions to be made for trustee's commissions and the expenses of this proceeding, amounts to $11,414.09. In other words, were it not for the last quoted provisions of the agreement of the parties, Frank F. Healey, on the termination of the trust, would have been entitled to receive $2,282.82, less a *pro rata* amount for commissions and expenses, or a concrete sum of somewhere between $1,500 and $2,000.

It is this sum which is the subject-matter of the litigation, all parties, with the exception of the widow and adult sons of Frank

F. Healey who died subsequent to the filing of the account, contending that by virtue of the terms of the agreement, Frank and those standing in his position are entitled to receive nothing since the charge of the $5,975 paid him more than exceeds this intestate share, and the latter asserting that the agreement is void and not binding upon them in this regard. They do not tender a return of the $5,975 which Frank admittedly received in return for his engagements, but assert their right to treat the agreement as void, to retain the financial consideration received thereunder and to receive this contested sum in addition.

It is unquestionable that as to the remainder of this trust the testator died intestate. As a result, each of his five children received a right to one-fifth of the distributable amount as of the date of their father's death in 1915, with the time of payment thereof alone postponed. As this interest did not involve real property, it was merely a chose in action or personal right which except for transfers or quasi-transfers thereof by him, was at all times to the date of his death owned by Frank F. Healey, and passed to his personal representatives on his death. (*Petersen* v. *Chemical Bank*, 32 N. Y. 21, 45; *Blood* v. *Kane*, 130 id. 514, 517; *Leitch* v. *Wells*, 48 id. 585, 595; *Wickenheiser* v. *Colonial Bank*, 168 App. Div. 329, 333; affd., 224 N. Y. 651; *Milliner* v. *Morris*, 219 App. Div. 425, 427; *Matter of White*, 136 Misc. 631, 633; *Matter of Booth*, 139 id. 253, 254; *Matter of Burstein*, 153 id. 515, 517.) His statutory distributees never can possess any direct right therein, and his personal representative may receive it only in the same plight as that in which it existed in his hands at the moment of death. (*Matter of Guarneri*, 149 Misc. 759, 762, 763.)

It follows that there is no merit whatsoever in the contention of the statutory distributees of Frank that he was without power to deal with their interests in this intestate remainder. The answer to the position is twofold, namely, *first*, that even if Frank had never dealt with this remainder these objectants could never have possessed any interest therein as such; and *second*, such acts as he performed were in respect to his own absolute and unconditioned property in which no other person could acquire any rights whatsoever except as they were received through him.

The question thereupon resolves itself wholly into one of whether Frank, if now living, would now be permitted to receive one-fifth of this remainder sum, which is less than $5,975, in spite of his express and unequivocal agreement (italicized above) that the sum received by him under the agreement should be considered as a payment to him of his share of such remainder interest up to the face amount of such payment without interest.

The premise upon which the argument for such recovery is based by the objectants is largely if not wholly predicated upon a final paragraph of the agreement of April 4, 1916, which reads: " This agreement is made subject to the approval of the same by the Surrogate of the County of Kings, New York, and is to be carried into effect only in case that such approval shall be given. In case the said Surrogate shall refuse to approve of this agreement, the same shall be null and void and shall not be binding upon any of the parties hereto."

At the time in question, the Hon. HERBERT T. KETCHAM was the surrogate of the county of Kings, N. Y.

The agreement, which has been introduced in evidence, bears the following indorsement in the familiar handwriting of Surrogate KETCHAM:

" The foregoing agreement and settlement is hereby approved.
" Dated April 29, 1916.
" HERBERT T. KETCHAM,
" Surrogate."

It is the contention of the objectants that, at the time in question, a surrogate did not possess the authority to approve an agreement of compromise or settlement and that no such authority existed until the enactment of section 24 of the Personal Property Law and section 73 of the Real Property Law, respectively, by chapters 419 and 441 of the Laws of 1919. Even were this to be granted, *arguendo*, it would not of necessity produce the result asserted. If such was in fact the law, then since every agreement is presumed to be drawn in reference to existing law (*McCracken* v. *Hayward*, 2 How. [43 U. S.] 608, 613; *Edwards* v. *Kearzey*, 96 U. S. 595, 601; *People ex rel. City of N. Y.* v. *Nixon*, 229 N. Y. 356, 361; *Matter of Corlies*, 150 Misc. 596, 598; affd., 242 App. Div. 703; *Matter of Cohen*, 149 Misc. 765, 769, 770), the terms of the agreement must be interpreted as contemplating a submission to and approval by a selected individual as arbitrator, in like manner as if the settlement of some controversy were to be submitted, for example, to the President of the United States or some other official in whose judgment and integrity the parties possessed mutual confidence.

That the approval actually given was that intended by the parties, including Frank F. Healey, is demonstrated in the most conclusive manner possible by their practical construction thereof as evidenced by their acts. They executed the agreement as one valid and binding and have acquiesced in this conception thereof for almost a quarter of a century. Having accepted the promised consideration which was payable to him only if the agreement was valid, and having retained it for over twenty years, Frank and those standing

in his position are estopped to deny its validity. (*Matter of Leverich*, 135 Misc. 774, 778; affd. on opinion of this court, 234 App. Div. 625.)

According to the plain terms of the agreement the consideration initially paid him was to be deemed a *pro tanto* satisfaction of any future intestate rights which might accrue to him. Since these are less than the amount of the payment, neither Frank nor any one claiming under him possesses any rights in the present remainder distribution which must be made wholly to the estates of the four daughters of the testator, in equal shares.

The objections to the adoption of this course are dismissed, with costs.

Enter decree on notice in conformity herewith.