NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
May, 1880.

VALENTINE *v.* VALENTINE.

*In the matter of the estate of* MARY J. VALENTINE,
*deceased.*

As against decedent's next-of-kin, an expenditure of $351 for a burial lot is not unreasonable, where the estate amounts to $13,000; especially when most of the next-of-kin consent thereto.

*It seems,* that as against creditors, the expenditure would not have been allowed.

Where a daughter, residing with her mother, has during her lifetime promised to pay board, and it appears that other members of the family were charged and paid board, a claim against the estate of the daughter for unpaid board will be allowed.

There is no presumption that professional services, rendered by a doctor to his wife's sister, are gratuitous.

The verified account of an administrator, and the duly vouched claim of a claimant, *prima facie* establish the validity of the claim, and throw the burden of proof on those contesting it, although the claimant is a relative of the decedent, and of the administrator.

The claim of a relative of decedent against his estate requires no stronger verification than that of any other creditor.

MOTION to confirm auditor's report on final accounting of administratrices. Exceptions were filed thereto in behalf of the next-of-kin of decedent.

The first exception relates to the finding of the auditor " that the purchase of a burial lot for decedent was necessary and proper; that the amount paid therefor was $351 ; that the administratrices used due diligence and economy in the selection, and that said item should be allowed." The exception states that diligence and economy were not used, and that it was improper to purchase a whole family plot.

The facts in relation to the purchase appear through the testimony of Abraham B. Valentine, a brother of decedent's, who testified that he purchased it for her ; that it was the nearest lot to that of another deceased sister, that he could purchase ; that it was the most economical and the smallest lot that he could purchase in that vicinity ; that the authorities of Woodlawn Cemetery would not consent to divide or make it of less size ; that he made inquiry for other lots in the vicinity, and that only more expensive ones were offered ; he would not say of the same size.

The second exception is to the finding that " Jane Valentine, one of the administratrices, furnished board to the decedent in her lifetime at No. 10 East Forty-

first street, in the city of New York, together with a large front room upon the third floor, for the period of two hundred and twenty-six weeks; that $3,164, being at the rate of $14 per week for said time, is a reasonable price for said board and room; that no part of said amount was paid during the life-time of said deceased, and that said item should be allowed." The exception stated, that as the board was furnished decedent by her mother, as a member of her family, and as no specific sum was ever charged or paid during decedent's life, the mother was entitled to no sum for board.

The testimony in relation to it was substantially as follows: Jane Valentine, the claimant, testified that decedent lived with her during her whole life; that she occupied the third story front room of 10 East Forty-first street; that witness paid all the running expenses of the house, supplying all the servants; that decedent boarded at her table; that her health was very poor; never confined to her bed, but confined to the house the last four or five years, more or less, and to her room the last four or five months. She had a nurse the last two months only. She previously required much attendance, furnished by witness's servants. That a son and another daughter lived with her, and paid board.

That she had demanded board from decedent, but that none was paid during the last five or six years; that the two hundred and twenty-six weeks are part of the five years; that she had deducted the portion of the time she was out of town; that such board and accommodation were reasonably worth $25 a week; that decedent had a separate and independent estate of her own, and was not dependent upon witness for support.

Edna V. Minor, decedent's sister, testified that she resided at 10 East Forty-first street with her mother, Jane Valentine; that decedent resided there, a part of the time occupying the second story front room, and for the last five years the third story front room, having closets and other appurtenances fully furnished; that the table was first-class; that the accommodation and board supplied to her (decedent) was worth $25 a week. Her washing was included in this bill. Have heard mother ask her for her board; she would reply that she would pay it later. She would say "You know I can't live long, can't you wait till then." That she made these remarks once within three weeks of her death, and once four or five years before her death, and at times between : that she did not recollect that the amount was ever stated. That witness had never seen decedent pay any board during the last five years of her life; don't know of her speaking of having paid any board during that period; knew nothing of her business habits, and don't remember that she stated that it was her habit to pay her bills at the close of each year.

Abraham B. Valentine testified that he lived in the house with decedent, ever since it was purchased; that she occupied the large front room on the third floor, ever since Mrs. Purdy's (the deceased's sister) death, about ten years; that she was not prompt in paying her debts as they were contracted, but was in the habit of procrastinating. It was a portion of her religious belief to use a tenth or tithe of her income for charitable objects. She has, from time to time, borrowed money of witness, but did not state for what purpose she borrowed it; that witness did not know sufficiently well of his own

knowledge to answer, that she had a habit at the end of the year of paying all the debts that had accrued during the year. She did not borrow at the end of the year specially. We all boarded together, and occupied the same table. She did not, at the table, habitually say, that she paid all her debts at the end of the year; that he had never seen her pay his mother for "rent, board, or otherwise."

The third exception relates to the bill of John C. Minor against this estate, for "professional services rendered, and medicines furnished from January 1, 1874, to February 22, 1877," amounting to $836, and included in the account in the schedule of "debts paid;" as to which the auditor's report is: "It was claimed that as the medical services were rendered by John C. Minor, who is the husband of one of the administratrices, and the son-in-law of the other administratrix, the burden was upon said administratrices to support said claim by proof other than the voucher herein. The proctor for the administratrices claimed that having presented and filed a duly verified voucher, the burden was upon the objector to impeach said item.

" After due deliberation, I held that the burden was upon the contestant to impeach said item, and duly notified the counsel for the respective parties to this effect, and no testimony having been offered in regard to said item, I report that said item should be allowed."

Exceptants claimed that the voucher did not furnish *prima facie* evidence of such services, or their value.

WM. M. MARTIN, *proctor for administratrices.*

JOHN A. FOSTER, *special guardian.*

THE SURROGATE.—As to the first exception, which relates to the price of the burial plot, while I should regard it unreasonable if creditors of the decedent had intervened, yet, as the matter relates only to the rights of next-of-kin, under the proof, I am of the opinion that the evidence does not show an unreasonable expenditure. In the first place, the estate, after the payment of debts, amounts to about $13,000, and the expenditure was made by two of the next-of-kin, acting through a third, three others not objecting, and presumably consenting. There is no evidence that a suitable lot could have been procured at a less sum. Hence the auditor was compelled to allow the sum expended, or disallow it altogether. I am of the opinion that while the law is well settled that the funeral and burial expenses should be according to the decedent's condition and rank in life, and the amount of the estate, yet the concurrence of most of the next-of-kin is strong evidence of the suitableness of such expenditure. The exception should be overruled. The second exception should be overruled, for the reason that when the decedent was asked to pay board she did not deny her liability or refuse to pay, but recognized the liability, and promised to pay. It is well settled, by well-considered and numerous authorities, that where services are rendered between members of the same family, no presumption of a promise to pay results. But that is in case there is no evidence of an intention to charge, and pay. (See Bowen *v.* Bowen, 2 *Bradf.*, 336, and cases there cited.)

In this case there is also evidence that other members of the family were charged for and paid board, and I am of the opinion that under the proof, the claim

of the mother, one of the administratrices, was sufficiently proved and properly allowed, and that the exception should be overruled.

The third exception should also be overruled, for the reason that the duly verified account of the administratrices, together with the duly vouched claim of the claimant, was at least *prima facie* evidence of its genuineness, and required proof on the part of the contestant, tending to show that the claim was not genuine, or was improperly paid by the representatives of the estate.

I know of no rule which demands stronger verification of a claim against an estate because a relative happens to present it, and I am entirely clear, that the law raises no presumption that the husband is liable for the support, maintenance or cure of his wife's sister.

The report must be confirmed.

Ordered accordingly.