## In re BOARDMAN'S WILL.

*(Surrogate's Court, Cattaraugus County. December 29, 1891.)*

1. WILLS—PROBATE—CONSTRUCTION—VALIDITY.

    A witness to a will offered for probate, which had been executed 10 years before, had but a vague recollection of the circumstances attending the execution, but was of the impression that it was not signed by the testator in the presence of himself and the other witnesses, and that he did not observe the signature. It appeared that this witness had written the date immediately above the place for testator's signature, and could not have failed to observe its absence at the time. The other witness testified explicitly that the testator signed the will in the presence of both of them as witnesses. *Held*, that probate of the will would be allowed.

2. SAME—PROVISION FOR MONUMENT—VALIDITY.

    A provision in a will that all of testator's property remaining after paying his debts should be expended for a monument at his grave is not void on the ground that there is no ascertained beneficiary.

3. SAME—CONSTRUCTION.

    Such a provision is to be construed with reference to the circumstances and station in life of testator, and only a reasonable portion of his estate should be expended thereunder.

4. SAME—PROBATE—INSPECTION.

    In controversies as to due execution of a will, it is proper to make an inspection of the document itself.

Proceeding for the probate of the will of Levi W. Boardman, deceased. Will admitted to probate, and certain provisions construed.

*Nash & Willson* and *W. S. Thrasher*, for proponents. *D. E. Powell* and *William Woodbury*, for contestants.

SPRING, S. The testator sent for the subscribing witnesses to come to his house in the night, to witness the execution of his will. It had been previously drawn, and he personally supervised its execution. He was explicit in his declaration that it was his will, and in his request to them to subscribe it as witnesses. One of the witnesses is explicit in testifying testator signed the will in their presence, while the other has no definite recollection, but an

impression it was not signed by the testator in their presence, and that he did not observe his signature. Ten years have elapsed since its execution, and Mr. Hunton has evidently forgotten the details of the occurrence. He wrote the date of the will immediately preceding the signature of the testator, and so important an omission as the absence of the name of the testator would have attracted his attention. There is more doubt as to the codicil. That instrument, however, does nothing but appoint an executor, and I think there was in its execution a substantial compliance with the statute. He took the will and codicil to the store personally, and, while this codicil was not a holograph instrument, it was prepared for him before he went to have it executed. It was drawn on the back of the original will, and testator was evidently familiar with the formalities incident to the execution of wills, as is shown by the clearness of his directions when the original will was drawn. Both witnesses agree that he said it was a codicil to his will, and asked them to subscribe as witnesses, which they then did in his presence. In controversies of this kind it is proper to make an inspection of the document itself. See *In re Wilcox*, (Sup.) 14 N. Y. Supp. 109. And an examination of the signatures convinces me they were all written with the same ink, and apparently at the same time. Both the will and codicil should be admitted to probate.

The will was as follows: "*First*. I gave and bequeath to the heirs of my daughter Mariah Theresa Eddy now diseased the sum of five hundred (500) dollars shair and shair alike. *Second*. That after paying all my debts after my death it is my will and direction that the ballance and remainder of all my property, boath real and personal, shal be expended in the building and erecting a monument at the head of my grave togather with sutible fense and fixtures."

The construction of the second clause of the will is put in issue by the objections filed. The counsel for the contestants, in a very elaborate brief, argue with much ingenuity that there is no ascertained beneficiary, and hence that the will is void for uncertainty, and cites a number of authorities, of which *Holland* v. *Alcock*, 108 N. Y. 312, 16 N. E. Rep. 305, and *Read* v. *Williams*, 125 N. Y. 560, 26 N. E. Rep. 730, are samples. I do not think those cases are applicable. Had the testator directed in plain, unequivocal terms that his executors expend a reasonable sum in the purchase of a monument to be erected at his grave, no one would have questioned the validity of the direction. The erection of a monument is one of the incidents to the administration of an estate of a decedent, of the same class as funeral expenses. *Wood* v. *Vandenburgh*, 6 Paige, 277–285. And such a provision is one that a testator has the right to make, even to the extent of all of his property. *Pfaler* v. *Raberg*, 3 Dem. Sur. 360; *In re Frazer*, 92 N. Y. 239–249; *Emans* v. *Hickman*, 12 Hun, 425. But a fair interpretation of this clause is no more than a direction to his executors to set apart a reasonable portion of his estate for the purposes stated. He was a farmer who had acquired a small competence by dint of the frugality and self-denial which the life of a small farmer implies. He had reared a large family, who had remained with him until they severally attained majority. He lived at a distance even from a small village, and a man of his stamp would hardly desire that the entire savings of his provident life should be devoted to the erection of a tombstone in a country graveyard, soon to be covered over with the weeds and vines which are the usual adornments of such a place. He provided for a suitable fence and fixtures, and evidently had in mind a corresponding fitness in the purchase of his monument. But he preferred to trust to the wisdom of his executors in making this outlay than to his children, who had left home and become scattered In *Emans* v. *Hickman*, 12 Hun, 425, *supra*, a similar direction was construed to mean an expenditure suitable to his statior in life. While a literal interpretation of the language employed would seer

to imply testator intended to have all his residuary estate used in the erection of this monument and the adornment of his burial lot, yet, in arriving at his real intent, we must look at all the circumstances surrounding his life, and they would not uphold so extravagant an outlay. Certainly this interpretation does no greater violence to the language used than in the case cited. The testator provided in this clause that all of his property remaining after the payment of his debts should be expended for the purposes stated. A literal construction of this language would lead to the exclusion of the bequest in the first clause, and such, assuredly, was not his intention, for he designed the monument clause to be subsidiary to the previous bequest. Wherefore a fair interpretation of his will leads to about the following results: *First.* The payment of the expenses of this proceeding and of administration. *Second.* The payment of his debts and ordinary funeral expenses. *Third.* The payment of the first bequest. *Fourth.* The purchase of a monument and the adornment of his burial lot, for which no more than $500 should be expended. *Fifth.* The balance to his heirs at law and next of kin, in accordance with the laws of descent and distribution.