solely on Mrs. Sandberg's want of testamentary capacity and the lack of circumspection evident in the execution of a testamentary paper in favor of a stranger, at a time when Mrs. Sandberg, the testatrix, was dangerously ill in a public hospital and away from her natural guardian, and without his knowledge. That it was without his knowledge is significant only in so far as it lends color to the accusation that the will was clandestine.

Under the peculiar circumstances attending the execution of the paper propounded, the burden of proving that it was the voluntary and the conscious act of the testatrix lies on him who propounds it as a will. This degree of proof should be high in the situation proved to exist in this cause. The circumstances of Mrs. Sandberg and the facts attending the execution of the paper are quite sufficient to excite the suspicion of the surrogate and to require strict proof on the part of the proponent that the paper propounded as the will of Mrs. Sandberg was the free, the deliberate, and the conscious act of a capable testatrix. The circumstances shown repel the ordinary presumption in favor of a will, and require of the proponent stricter proof not only of the proper execution of the paper propounded, but of all the other elements entering into factum of a will. These requirements are not empty phrases, but substantive doctrines of probate law, and I shall not hesitate to enforce them when occasion requires, although I am ever reluctant to refuse effect to that which is clearly, or even presumptively, the will of the dead.

I am satisfied that the paper propounded is not the will of a capable testatrix, and that proper circumspection on the part of the actors in this particular act of testamentation was wholly lacking. The paper propounded was not the will of Mrs. Sandberg. I have unusual satisfaction in arriving at this conclusion in a case which to my mind bears so many marks of injustice, utter lack of circumspection, and even impropriety.

Settle decree accordingly, reserving questions of costs until settlement.

Decreed accordingly.

---

(75 Misc. Rep. 87.)

## In re FLYNN'S ESTATE.

(Surrogate's Court, New York County. October, 1911.)

EXECUTORS AND ADMINISTRATORS (§ 214*)—FUNERAL EXPENSES—ALLOWANCE.
     Where an undertaker fails to establish an express contract, he may be allowed his proper charges on theory of an assumpsit by the administratrix, under Code Civ. Proc. § 2729.

     [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 755; Dec. Dig. § 214.*]

In the matter of the estate of George Flynn. Claim for funeral expenses allowed.

Charles W. Culver, for petitioner.
Jacob I. Berman, for administratrix.

FOWLER, S. This is a proceeding by the undertaker to procure payment of $330.58 from the administratrix of George Flynn for the burial of the deceased. The undertaker proceeds on an express contract, claiming that the sister, who is the administratrix, delegated the charge of the funeral to her brother Thomas, who contracted for the funeral. The administratrix denies all this in substance, and claims that she herself ordered a funeral of the undertaker, which was not to exceed in cost those of her parents, who were buried by the same undertaker. Had the express contract alleged been established, that would end the controversy. It was not established to my satisfaction. The sister has made out her denial and claim, I think, by a preponderance of evidence.

But, doubtless, in proceedings of this character, if the undertaker fail to establish an express contract, he may be allowed his proper charges on the theory of an assumpsit by the administratrix to pay for the services and articles furnished, quantum valebant. Code Civ. Pro. § 2729; Donovan v. Harriman, 139 App. Div. 586, 124 N. Y. Supp. 194; Rubin v. Cohen, 129 App. Div. 395, 113 N. Y. Supp. 843; Matter of Wagner, 119 N. Y. 36, 23 N. E. 200. The reason for allowing a recovery on another theory than that alleged by the undertaker is to prevent circuity of action and the needless expense of further litigation. The Code contemplates this. Code Civ. Pro. § 2729.

No class of questions has given me more trouble since I have been in this seat than have such claims as this by the undertaker. Frequently the cost of the burial equals the entire estate of the deceased, who may nevertheless leave infant children or a widow unprovided for if the estate is wholly absorbed by a too costly interment. I am thus forced by their importance to give such matters close attention, no matter how trifling relatively the estate may be. Extremely nice questions of law often arise in proceedings like this. One of the practical difficulties in such proceedings is that contracts for funerals are ordinarily made by persons differently situated. On the one side is generally a person greatly agitated or overwhelmed by vain regrets or deep sorrow, and on the other side persons whose business it is to minister to the dead for profit. One side is, therefore, often unbusinesslike, vague, and forgetful, while the other is ordinarily alert, knowing, and careful.

But in this matter the undertaker has failed to establish the express contract which he alleges in his petition. Yet the undertaker is in all fairness entitled to be paid his just due in some proceeding. How much, is the question. The funeral of George Flynn cost in this instance much more than those of his parents. I do not think that the administratrix has established on her side more than that the funeral ordered by her and for which alone she is liable was to be similar to that of her parents; that is to say, that it was to be an inexpensive funeral, similar in character to the inexpensive funerals of her parents. This reduces the matter to an inquiry what recovery is proper under all the circumstances. It appears to me that there was an overcharge by the undertaker in several particulars.

The average undertaker in this city, as it appears from the testi-

mony, is in reality only a middleman or contractor. Nearly all the actual material, labor, and necessities for the average funeral are furnished by the great establishments. It is the latter who really furnish the coffin, the hearse, and most of the other material employed between the death and the grave. Such establishments have a fixed schedule of very moderate prices. To this prime cost such undertakers, as it is sworn on the stand, usually add what they can get out of the family. That even where there is no express contract the undertaker is entitled to add something for his costs and services is apparent. I think even his rent, telephone, and individual business establishment which he maintains ought to be fairly taken into the final account. But that in such cases he is only an agent is apparent. If he is to be regarded as the agent of the dead person's family, his status of trust precludes his making a profit beyond his services. If, on the other hand, he is the agent of the great funeral establishment, his legal position may be somewhat different. These are extremely nice questions of law, and just here I think I detect indications of a way by which relief from excessive charges may be afforded to these poor families, at least in those instances where there is no express contract. But I am not without doubts on many points. There is much room for discussion and full consideration, as I do not wish to be unjust to the undertaker and make any unwarranted assumption. But with care in these frequent cases at last we may arrive at the true legal principle and do justice to all concerned. Most of the precedents at hand seem not always to furnish us with the precise principle applicable to the facts before us.

The petitioner's claim in this instance was based on a theory of express contract, which I do not find established. These funeral bills of poor people, so often disputed in this court, are rarely presented to me on any precise legal theory or formula, and yet, as the surrogate is a mere creature of legal formulæ, his embarrassments are consequently great in this class of proceedings. To turn the parties out of court on a technicality is a hardship and an expense. The surrogate would then make matters worse instead of better than before with a poor family who came here for assistance. Yet to assign legal reasons in such informal proceedings, so as to have them stand the severe scrutiny of higher tribunals, necessarily controlled by the strictest legal formulæ, is often extremely difficult on the testimony informally offered to the surrogate.

Upon the theory of an assumpsit and quantum valebant, which I am driven to in this instance, if the undertaker in this matter is regarded as the principal, there is an overcharge apparent in his claims, and he is entitled to recover only the reasonable value of his material and services. The undertaker refused or neglected to prove with precision the actual cost of the articles and services furnished by him. These I find not to exceed $230 in value, and I will allow the undertaker this sum only against the administratrix. No costs will be allowed.

Decreed accordingly.