## In the Matter of the Estate of FRANCES L. COLLINS, Deceased.

Surrogate's Court, Chenango County, January 11, 1936.

*H. C. & V. D. Stratton* [*H. C. Stratton* of counsel], for the administratrix.

*Arthur J. Ruland* [*James S. Flanagan* and *Donald S. Whitney* of counsel], for the petitioners.

BROWN, S.   Frances L. Collins, a resident of Chenango county, died September 26, 1930, and on October twenty-seventh of the same year letters of administration were issued to Shirley M. Collins, a daughter.

This proceeding was commenced by Roberts & DeMunn, funeral directors in the city of Binghamton, N. Y., to compel the administratrix to file an account of her acts as such official and to pay their claim for an unpaid balance for funeral expenses. The administratrix filed an account of her proceedings and resists the payment of the balance of the claim, on the ground that the charges were unreasonable in amount.

The decedent died in the City Hospital in the city of Binghamton, N. Y. The petitioners were employed and the casket ordered by a stranger to them, one A. E. Clark, who, Mr. Roberts (one of the petitioners) testified, represented himself as a cousin and the only relative of the decedent. He ordered a casket priced at $550 and described as " metal, Armco iron, gold trimmings and a gold finish on it with a very elaborate satin lining to match the gold casket." The prices of caskets shown ranged from $150 to $850. The total bill of petitioners, including preparing body for burial, a dress purchased and transporting body at Clark's request to Oneida, where he resided, was $616.79. The administratrix has paid the sum of $466.79 and objects to the payment of any further amount. The estate consisted of a farm, valued at $3,500, and $200 in personal property.

At the time of Mrs. Collins' death, Shirley M. Collins, her daughter, who resided at Verona Station, Madison county, was her only next of kin. On the hearing in this court, evidence was given that the husband of Shirley M. Collins, and who was employed in Oneida, received information of Mrs. Collins' death and telephoned the City Hospital at Binghamton; on learning the body had been removed to the funeral home of Roberts & DeMunn, he called that firm and informed Mr. Roberts of the decedent's daughter and that she did not want the body brought to Oneida, requesting him to hold the same at Binghamton and that he and his wife would leave soon for that city; that Roberts refused to wait their arrival and announced that he had received orders from Mr. Clark and was leaving immediately with the body. Mr. and Mrs. Collins left their home that afternoon for Binghamton and, on arrival, found that Mr. Roberts had gone to Oneida with the decedent's body. Mr. Roberts admitted receiving the call from Mr. Collins informing him that his wife was a daughter of the decedent, but denied that he requested him to wait their arrival in Binghamton before leaving with the body. The fact that Mr. and Mrs. Collins left soon after the telephone conversation for Binghamton lends credence to the former's testimony concerning the conversation over the telephone. Mr. Roberts saw fit to follow the directions of Mr. Clark, a total stranger to him, and conveyed the body to Oneida, traveling some

200 miles going and returning, instead of attempting to verify the statements as to the relationship of Mrs. Shirley M. Collins or waiting for the daughter to arrive and give directions as to the burial of her mother's body, which she desired interred in a lot in a cemetery at Page Brook where the family had burial lots. Thus there was added to the expenses incurred at the time of the telephone call the charge of transporting the body to Oneida and an additional charge of $61 by undertakers who took charge of the body after its arrival in that city and the necessity of the purchase of a burial lot at Verona Center. The total funeral expenses, including the charges of petitioners, the charges of Monroe & Dunbar, of Oneida, and burial at Verona Center (including the purchase of a lot for $50), amount to the sum of $757.79.

We have here an estate consisting of personalty and realty valued at $3,700 and the total funeral expenses amount to $757.79, or a trifle more than twenty per cent of the entire estate, the charges of petitioners amounting to more than sixteen per cent of the estate.

Section 216 of the Surrogate's Court Act provides: " Every executor or administrator shall pay, out of the first moneys received, the reasonable funeral expenses of decedent, and the same shall be preferred to all debts and claims against the deceased. * * * If it shall appear, however, to the satisfaction of the surrogate, that there are sufficient moneys in the hands of the executor or administrator to pay the administration expenses and the reasonable funeral expenses, the surrogate shall hear the claim for funeral expenses, fix and determine the reasonable value thereof, and make a decree directing payment of the same, or of such part thereof as he may specify, within ten days thereafter."

There is a limitation to the amount a surrogate can allow for such purpose. This limitation is measured by the reasonableness of the sum expended. One engaged in furnishing material and performing services in connection with the burial of the dead and expecting to be paid from funds of the estate should exercise a reasonable amount of caution and judgment in entering into such engagements. In becoming parties to the contractual relations with Mr. Clark, petitioners were acting at their own risk in not ascertaining his financial ability to meet the obligations he was incurring or seeking information that the value of the estate was sufficient to justify such an expensive outlay for burial purposes. Surrogate FOWLER, writing in *Matter of Powers* (75 Misc. 85, at p. 86), says: " It is the duty of the administratrix in the first instance to bury the dead, and the expenses thereof are preferential claims. If another bury the dead he may recover the reasonable costs thereof. * * * If the executor or administrator bury the dead with a lavish or wanton

expenditure this is a devastavit of the estate, and a loss to him and not to the creditors, legatees or next of kin of deceased. To recover such expenses of the administratrix the claimant must always first show that they are reasonable and in accordance with the condition of the estate and the station in life of the deceased." In *Matter of Stiles* (126 Misc. 715, at p. 719) it is stated: " The executor, even before probate, may pay the funeral charges and notwithstanding the statute setting out the order of payment of debts, if he follows that direction, or that authority, the amount will be allowed to him as part of the expenses of his trust, with a restriction that the amount is no greater than is necessary." In *Matter of Horn* (151 Misc. 261, at p. 263) we find the following: " It follows that, as her administrator, the husband could not, on the facts of this case, be required to pay out of her estate anything more than the reasonable value of the necessary charges for burial, in keeping with her station in life and with the apparent amount of her estate." In *Matter of Matyasz* (151 Misc. 370, at p. 377) Surrogate WINGATE says: " As has frequently been pointed out, perhaps nowhere more clearly than by former Surrogate FOWLER in *Matter of Moran* (75 Misc. 90), the only basis for a recovery by an undertaker for funeral expenses in the Surrogate's Court is upon assumpsit. The liability of the estate fiduciary as such in this respect is expressly limited to ' the reasonable funeral expenses of decedent ' which has been held, times without number, to be only to the extent of a sum compatible with the circumstances of the decedent." In *Matter of Lanza* (149 Misc. 95), in a proceeding of a similar character to the present one, at page 97 appears the following: " It is a familiar rule of law that an estate fiduciary is subject to a duty to interpose any available defense to any demand which is made upon the assets in his charge under penalty of personal liability in the event of failure so to do. * * * This principle is as pertinent to applications of the present type as to any other variety of claim, and were an executor or administrator to suffer such an order to be entered for the payment of an unreasonably large sum, either by reason of his default in answer or failure to raise the issue, his personal responsibility therefor would be inevitable." In *Matter of Larney* (148 Misc. 871, at p. 878) Surrogate WINGATE says: " Quite aside from the considerations hereinbefore considered, it is apparent that the allegations of the petition, standing alone, are insufficient to warrant the relief sought. The relief permitted by section 216 of the Surrogate's Court Act is expressly conditioned on a demonstration ' that the executor * * * has received moneys belonging to the estate which are applicable to the payment of the claims for funeral expenses, and that the executor * * * admits the validity of

the claim * * * and the reasonableness of the amount thereof.' * * * Finally, not only does the executor fail to admit the reasonableness of the claim but the only justiciable facts alleged in the affidavit indicate that, amounting as it *prima facie* does to about twenty per cent of the gross estate of $5,500, it is grossly unreasonable and would not be properly allowable by the court in the amount claimed even were the executor complacent in this regard." (*Matter of Flynn*, 75 Misc. 87; affd., 156 App. Div. 939; *Matter of Moran*, 75 Misc. 90; *Matter of Kulyk*, 243 App. Div. 443; *Matter of Dix*, 148 Misc. 147; *Matter of Crawford*, 144 N. Y. Supp. 565.)

During the hearing, counsel for administratrix was permitted over the objection of petitioners to show the cost of the casket to Roberts & DeMunn. The correctness of the ruling on the objection is questioned on the authority of *Kittle* v. *Huntley* (67 Hun, 617). Evidently, there was some doubt in the mind of the court in that case at the time of the decision as to the soundness of the rule adopted as disclosed in the opening words, " but if there be doubt as to the correctness of this rule," found in the last paragraph of the opinion. It will be noted that the receipt of the evidence in that case, although held objectionable, was not considered grounds for a reversal of the judgment. In arriving at a decision in this case, I have given no consideration to the cost price to the petitioners of the casket furnished, as a factor in determining the merits of the issue. The pertinent question to which this court has addressed its attention is whether the charge is reasonable, taking into consideration the humble station in life of the decedent, the small amount of personal property she left and the modest value of the real estate consisting of a farm. In a line of decisions involving a like question, the main point stressed is the reasonableness of the charge. (*Emans* v. *Hickman*, 12 Hun, 425; *Valentine* v. *Valentine*, 4 Redf. 265; *Matter of Boardman*, 20 N. Y. Supp. 60; *Matter of Young*, 92 Misc. 633.)

Counsel for petitioners urges that the administratrix has ratified the bill presented by the payment of $466.79 on account, her failure to reject it and by statements in two letters, one of February 16, 1935, addressed to him and one of July 19, 1934, addressed to the petitioners. I am unwilling to find from the evidence that the administratrix ever approved of or adopted the funeral as ordered by Clark so as to amount to a ratification on her part. Referring to her attitude in connection with the bill, she testified, concerning a conversation had with Mr. Roberts: " The first time I saw him we told him we thought it was excessive and we didn't feel that we'd been treated right. He wouldn't listen at all." It does not appear

that, at the time she wrote the letters referred to, she had been informed of her rights to refuse to pay the bill in full if she deemed it excessive. Under all of the circumstances and the evidence, I am not convinced that her acts or letters amounted to a ratification. As administratrix, she had no authority under section 216 of the Surrogate's Court Act to approve or pay an exorbitant and excessive bill incurred by a third person acting in the role of an intruder, although acting in the mistaken belief that he could divert nearly one-half of the insurance money, to which neither he nor the estate had any claim. Whatever may have been his motive, Mr. Clark apparently was intermeddling when he gave directions as to the burial of the decedent. The petitioners elected to disregard the request and wishes of the daughter concerning the place of burial and, by their refusal and subsequent conduct, unnecessarily increased materially the expenses incident to such burial.

In my opinion, the claim of petitioners is excessive and I fix and determine the reasonable value of petitioners' claim for funeral expenses at $466.79, payment of which has already been made. Application dismissed, with ten dollars costs.