STATE OF NEW YORK, Respondent, *v.* J. S. GARLICK PARKSIDE MEMORIAL CHAPELS, INC., Appellant.

First Department, June 6, 1968.

*Orrin G. Judd* of counsel (*George Goodstein* and *Joseph Rubin* with him on the brief; *Goldstein, Judd & Gurfein,* attorneys), for appellant.

*Philip Weinberg* of counsel (*Samuel A. Hirshowitz* and *Henry P. Lipscomb, Jr.,* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

BOTEIN, P. J.  Defendant-appellant operates a funeral establishment pursuant to article 34 of the Public Health Law (§§ 3400–3457), the article which regulates the practice of funeral directing in this State.  Section 3457 authorizes the Attorney-General, plaintiff-respondent herein, to maintain an action against any person who violates any provision of the article, and provides that in such action the final judgment in favor of the plaintiff must perpetually restrain the defendant from the commission or continuance of the acts complained of. The present action was brought to restrain an alleged violation

of section 3440-a, a provision added to the Public Health Law in 1964 (L. 1964, ch. 427), reading as follows:

" § 3440-a. Statement to be furnished by certain licensed persons, funeral directors and funeral establishments when funeral arrangements are made. Every person licensed pursuant to this article, including funeral directors and funeral establishments, shall furnish at the time funeral arrangements are made for the care and disposition of the body of a deceased person, a written statement showing thereon the price of the funeral, which shall include an itemized list of the services and merchandise to be furnished for such price and a statement of the cash advances and expenditures to be advanced."

The point in contention is whether there must be shown on the " written statement," not only " the price of the funeral," but also the price of each of the items of services and merchandise appearing on the statement. Accepting plaintiff's construction of the statute, Special Term granted summary judgment against defendant and enjoined it " from arranging a funeral without rendering or furnishing to the person arranging such funeral an itemized memorandum or written statement which shall state the total price of the said funeral and further included thereon contain an itemization specifying the price of each item of services and merchandise furnished or to be furnished by the defendant which comprises the said funeral bill."

The issue arises from a self-styled " Memorandum," that is to say, a bill, rendered by defendant " To David Nissenbaum for the funeral of Elizabeth Nissenbaum, Dec. 21, 1965." Mr. Nissenbaum had authorized defendant to conduct the funeral, and committed himself to pay the funeral " expenses and disbursements," by signing an " arrangement card " on a printed form. This card included a printed list of the following items, with a space opposite each for the insertion of a figure: Removing Remains, Hearse, Limousines, Casket, Shroud, Wash and Dress, Preparation and Care, Use of Facilities, Outercase, Service, Grave Marker, Casket Mattress, Talis. A dollar amount was inserted with respect to the casket only (450), but most of the other items were checkmarked, evidently to indicate that defendant would furnish them without additional charge. The card similarly listed, under the heading " Actual Moneys Advanced," the following items (with respect to two of which a dollar amount was inserted): Grave, Grave Opening, Lowering Device and Evergreens, Newspaper Notices, Rabbi's Fee, Watcher Nights, Transcripts, Gratuities. The arrangement card concludes with the following acknowledgment: " At the

time of funeral arrangements, the undersigned was furnished memo bill detailing funeral price, services and merchandise to be furnished and cash to be advanced as shown on this arrangement card.''

The bill, also a printed form, lists the items of advances substantially as did the arrangement card, but substitutes the following printed paragraph for the list of services and merchandise which appeared on the card (the same dollar figure, 450, being inserted): '' Including: our professional services; preparation and care; arrangement and direction of the funeral; preparation and filing of necessary authorizations and consents; our personnel; use of necessary equipment and establishment facilities; local removal; hearse and a limousine to a local cemetery; our personal service and attendance and casket as selected. $       ''

The controversy is directed to the statutory adequacy of the bill, although conceivably the arrangement card might also serve as or as a component of the written statement which the statute requires. In either case, however, no dollar breakdown of the price was furnished, and, as the arrangement card indicates, the price was determined by the charge for the casket. This method of pricing, by which the price set for the casket includes all of the services and merchandise the funeral establishment is to provide, is known as '' unit pricing '' or '' package pricing.''

Section 3440-a is the product of an investigation by the Attorney-General of abuses in connection with funeral practices. The section enacts a bill originating with and sponsored by him—'' This bill is part of the program of the Attorney General,'' he said in an explanatory memorandum dated February 27, 1964, evidently submitted to the Legislature (N. Y. Legis. Ann., 1964, p. 296); and the bill in each House expressly notes that it was prepared under the direction of the New York State Department of Law and was introduced at its request (Sen. Int. No. 3854, Pr. No. 4536, March 16, 1964; Assembly Int. No. 5144, Pr. No. 5628, March 2, 1964). The memorandum states the general purpose of the bill in these terms: '' Requires a person licensed pursuant to the provisions of the article to furnish a prospective user of funeral services an itemized statement of the price of the funeral and all merchandise and services that are included therein.'' More specifically, the memorandum discloses that the bill had a twofold object. The investigation had indicated that '' one of the abuses in connection with funeral practices is that a customer is quoted one price for the funeral service and then, after the burial, is presented with many addi-

tional charges for other services which he thought were included in the originally-quoted price." The memorandum points out that the bill "would alleviate this problem by requiring the seller to itemize the services, merchandise, cash advances and expenditures that are included in the price he quotes for the funeral."

Defendant argues in effect that the attachment of a dollar figure to each item reflected in the gross price would not be necessary to enable the customer to protest against a later-asserted charge for additional items. The same could not be said, however, with respect to the second purpose of the bill, namely, to deter unit pricing. The Attorney-General's memorandum continues: "Related to the problem is one of 'unit pricing', that is, the price set for the casket includes all of the undertaker's services, whether the family wants those services or not. Unit pricing makes it impossible for the family to cut the price of the funeral by eliminating some of the 'services'." To be sure, if embalming is not desired, or there is no need for a limousine or the use of a chapel, a request for some reduction in the unit price would seem theoretically possible, but the investigation of the Attorney-General revealed, as reported in his further memorandum to the Legislature dated March 9, 1964, that "the elimination of an item quoted in a 'package price funeral' does not reduce the cost of the said funeral."

It is obvious that if items are individually priced, an elimination of one or more would reduce the total cost. That the legislation was designed to impose a price itemization is further shown by the following extract from the memorandum of March 9, 1964: "The City sales tax of 4% is incurred on a 'package price funeral' but in the event the undertaker separately itemizes his professional services the said tax is incurred to the extent of casket cost and the tangible personal property only, eliminating the tax on professional services."

We are not concerned with determining the existence or extent of improprieties in the practices of funeral establishments or with the efficacy of the reform the Attorney-General proposed to the Legislature. Rather, we cite his communications to that body because they establish the purpose and meaning of the bill he prepared, and there is no reason to suppose that the Legislature, adopting his recommendation without change, contemplated any variation of purpose or meaning. The indorsement of the bill by the State Department of Health, contained in a communication to counsel to the Senate Majority and Minority Leaders, dated March 23, 1964, likewise states, "This bill now

on 3rd Rdg. in the Senate amends the Public Health Law to require funeral directors to furnish to those arranging for funeral services an itemized statement of the merchandise and services and the charge therefor included in the agreed price for the funeral services."

The record also includes indorsements of the bill by the New York State Funeral Directors Association, Inc., in letters to the Chairman of the Assembly Health Committee, among other legislators, and to the Governor. These letters repeat the language of the bill and in no way detract from the purport of the communications to the Legislature by the Attorney-General and the Department of Health. Defendant's motion papers include an affidavit by counsel to the association which finds the Attorney-General's memoranda no obstacle to a restrictive interpretation of section 3440-a, but does so by ignoring a vital part of the February 27, 1964 memorandum and merely disputing the criticisms of funeral practices in the March 9, 1964 memorandum. The above-mentioned letters by the association refer to and enclose a news release issued by its president expressing agreement with the bill. It contains the following statements:

" Many years ago, our membership adopted funeral arrangement forms setting forth in full detail the costs, services and merchandise involved. Since then, we have been urging the public to expect a detailed memorandum of the arrangements.

" Every well-regulated funeral establishment keeps a detailed record of all funeral arrangements. There is no reason in the ordinary situation why the funeral director should not furnish a copy as the Attorney General's bill requires."

It is not conceivable to us that any legislator reading these sentences — with their reference to costs, services and merchandise in full detail — could believe that the association's interpretation of the thrust of the bill differed from that of the Attorney-General and the Department of Health.

Viewed against the genesis of the enactment, what the Legislature was seeking to accomplish is markedly clear, and in our opinion the objective has been given adequate statutory expression, unless the language is to be read " merely as a collection of English words " (*United States* v. *Dotterweich,* 320 U. S. 277, 280).

" Words contained in a statute must, of course, be given the meaning to which they are reasonably entitled but this does not mean that we must accept the language in all of its sheer literalness and forget completely the object which the statute was designed to accomplish." (*Matter of Kelly* v. *Sugarman,* 12

N Y 2d 298, 300). That violation of the statute invites possible penal consequences[1] does not mean that it is to be interpreted with eyes averted from its obvious remedial purpose.

"While statutes of the character designated are to be construed with strictness in favor of a defendant, still they are subject to rules of construction which are reasonable under the surrounding circumstances, and they are not wholly exempt from the application of the principle that the means may be fashioned somewhat to the end and that the letter is to be read somewhat in the light of the purpose to be accomplished." (*People* v. *Ahearn,* 196 N. Y. 221, 230). As suggested in *People* v. *Byron* (17 N Y 2d 64, 67) the test is whether a reasonable man subject to the statute would be informed of what is required of him, and the test is satisfied if the statutory words " ' have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden ' " (cf. Penal Law, § 5.00).

When an itemized list is to be furnished in connection with an over-all price, the common expectation, we should think, is that the items will carry separate figures (cf. *Lorenson* v. *City of Los Angeles,* 254 P. 2d 54, 58, affd. 41 Cal. 2d 447). Even defendant appears to concede that subdivision of the over-all price would be required if the words " for such price " had been omitted from the statute (reply brief, pp. 8, 14) — an exiguous refinement surely. If the purpose of the statute is to be gleaned from its mere surface, the least the Legislature must have intended was that the person ordering a funeral should be required to pay only for what he ordered and received. If he is being charged for an item not on the list, the statute enables him to detect the overcharge and to protest it. If he fails to receive an item which is on the list, the statute likewise helps him to know that he has been overcharged but, under defendant's reading, the extent of the overcharge is unknown and its amount left, realistically, to arbitrary determination by the funeral establishment. No reason for this obvious handicap appearing, no reason exists to infer it. Although not in terms required by the statute, defendant's form of bill as a matter of course provides dollar itemization of the " cash advances and

---

[1] Section 3456 of the Public Health Law provides: "Any person who shall engage in the business or practice of funeral directing, undertaking or embalming in violation of any provisions of this article, shall be liable to the penalty of two hundred fifty dollars, suspension or revocation of license, or other disciplinary action, as specified by law for each such violation and may also be found guilty of a misdemeanor."

expenditures to be advanced.'' Defendant argues that cash disbursements are separate and readily ascertainable, whereas services (merchandise is ignored) are not capable of similar subdivision by price. But defendant attempts no factual demonstration that its services cannot practicably be separated into significant price categories.

After the appeal herein was noticed the Attorney-General proposed that section 3440-a be amended by inserting the words '' and the price of each item '' after the words '' for such price.'' Subsequently he proposed a further amendment which would in addition require the '' written statement '' to list five specified items of services and merchandise as a minimum. We see in these precautionary proposals no more than conventional recognition of the hazard attendant upon litigation, and to draw any inference from the fact that the Legislature did not enact them would be impermissibly speculative (cf. *Matter of Colonial Liq. Distrs.* v. *O'Connell,* 295 N. Y. 129, 140, 141).

The order and judgment entered on January 12, 1968 should be affirmed, with costs and disbursements.

McGIVERN, J. (dissenting). I dissent and would reverse.

The statute prescribes two things: (1) a written statement showing the price of the funeral and (2) an itemized list of the services to be furnished for such price. This requirement was intended to eliminate the possibility of a funeral director charging additional sums for services not rendered or not requested. It is the result of consultations between the State authorities and the Funeral Directors Association. And for three years the State Department of Health apparently regarded with complete equanimity and apparent approval the practice now challenged by the Attorney-General.

In the funeral bill before us, both of the statutory essentials are present. There is the written memorandum stating the price. And this memorandum itemizes the services to be rendered. Now, the majority would add another provision, to wit, '' the price of each item,'' separate, broken down and allocated. But the statute does not exact this. And such a change, by way of an additional clause, may only be wrought by legislation. '' It is not for the courts to correct omissions or defects in legislation.'' (*Triborough Bridge & Tunnel Auth.* v. *Crystal & Son,* 2 N Y 2d 961, 963.)

Even the Attorney-General fatally admits that the added requirement, gratuitously impressed by the majority, is not yet present in the statute. In the furtherance of a proposed amendment to section 3440-a of the Public Health Law, sought by the

Attorney-General (Sen. Int. No. 2309 and Assembly Int. No. 3417 of 1968), the Attorney-General in his supporting memorandum, states: " While the primary aim of the 1964 amendment was to assure that the buyer of such services and merchandise would know the item-by-item cost of the funeral, *it appears that the existing statutory language could also be interpreted to mean that only the merchandise and services furnished need be itemized and that the overall cost may still be given in one total amount.*" (Emphasis added.)

Indeed, not only " could " the statute be so interpreted, i.e., as *not* requiring a separate, specific itemization of the price for each item, but the plain language and the over-all design of those who drafted it, both sustain this singular interpretation.

Perhaps the majority is clairvoyant, and someday the Legislature will adopt the proffered amendment, but until the missing link is added by the elected representatives of the sovereign people, we must construe the statute as we find it and not as we or the Attorney-General think it should be. (*Longines-Wittnauer* v. *Barnes & Reinecke,* 15 N Y 2d 443, 465, FULD, J.) As " the Legislature intended, and not as we would have written it had we been legislative draftsmen." (*Thomas* v. *Melbert Foods,* 19 N Y 2d 216, 223, BURKE, J., [dissenting opn.].)

Lastly, a literal construction of the subject statute is in order because it has teeth in it. Violation of any provisions of article 34 of the Public Health Law constitutes a misdemeanor and furnishes ground for suspension or revocation of a funeral director's license. Although it is remedial in nature and designed for the protection of the general public, it has a criminal sanction and thus is also penal in character. As such, it must be strictly construed. (*People* v. *Benc,* 288 N. Y. 318, 323; *American Broadcasting Co.* v. *United States,* 110 F. Supp. 374, 385 [U. S. Dist. Ct., S. D., N. Y., 1953], affd. *sub nom. Federal Communications Comm.* v. *American Broadcasting Co.,* 347 U. S. 284, 296 [1954].)

Accordingly, I deem unwarranted the construction urged by the majority, and I would dismiss the complaint.

STEVENS and McNALLY, JJ., concur with BOTEIN, P. J.; McGIVERN, J., dissents in opinion in which EAGER, J., concurs.

Order and judgment (one paper), so far as appealed from, affirmed with $50 costs and disbursements to the respondent.