OPINION OF THE COURT
William W. Serra, S.
In this action, a trial has been had of the validity of a claim for funeral expenses against the administrator of the estate of George Doolskis, deceased. The action was brought in the Supreme Court of the State of New York in Steuben County and was transferred by the Supreme Court to Allegany County in an order providing "that this matter be tried before the Surrogate’s Court in Allegany County”. The action has been tried before the Surrogate without a jury.
The court finds that the decedent, George Doolskis, died on February 1, 1976, at Jones Memorial Hospital at 10:20 p.m., leaving no known relatives. A friend, Mrs. Peggy Rase called the County Treasurer, Mr. Mulholland, on February 2, 1976. He advised her to make arrangements for the funeral. Both Mr. Mulholland and Mrs. Rase contacted Mr. Beaver, the plaintiff, a funeral director, concerning funeral arrangements. Mr. Mulholland testified he advised the plaintiff by telephone to keep the arrangements modest, because he did not know what the assets of the estate were. He also advised as to the welfare allowances for funerals in Allegany County, being $800 plus the cost of the grave liner, plus the outside charges as far as mileage and the cost of the grave were concerned.
The plaintiff removed the body from the Jones Memorial Hospital in Wellsville, New York, to his funeral home in Hornell, New York, on the same day. In the course of the removal, he became aware that the decedent had bankbooks, which he saw in the possession of the hospital, but which were retained by the hospital. He made the funeral arrangements with Mrs. Rase. At the time of the arrangements with Mrs. Rase, he advised her that the decedent had what he believed to be 50, 60, or 70 thousand dollars. Mrs. Rase and he then finalized the arrangements which were, in her presence, reduced to a detailed statement itemizing all the costs, including services, equipment, cemetery, and miscellaneous charges, 16 items in all. The statement or memorandum was not signed, and no copy was given to Mrs. Rase at that time. Mrs. Rase ordered an African mahongany casket, a high-cost wooden *1119 casket, at $1,850, and a concrete and steel liner at $585, a medium priced item. The total funeral cost was to be $3,377. Ample corroborative testimony has been furnished to support the prices of materials and services rendered, quantum meruit. The defendant, who is also a funeral director, did not contest the value of services at the trial.
The court takes judicial notice of the following facts appearing in the estate of George Doolskis. Both parties to this action petitioned this court for letters of administration, the plaintiff as a creditor and the defendant as public administrator. The defendant petitioned the court for temporary and for permanent letters of administration on February 13, 1976. Temporary letters were granted on that date, and citation issued on February 17, 1976. The plaintiff petitioned the court for letters of administration by petition dated February 10, 1976 and duly filed March 1, 1976, on which date an order for publication of citation was also issued in his proceeding for letters. Letters of administration were issued by the court to Mr. Mulholland as public administrator on April 20, 1976. The final account shows a gross estate of $51,779.43 (including income of $1,122.51), net estate of $44,772.83 before payment of the funeral expenses of $3,377 which have been rejected by the administrator on the account. There being no known distributees, the undistributed balance will be payable to the State of New York. The Assistant Attorney-General of the State of New York has actively participated in the defense of this action on behalf of the residuary interest of the State of New York, together with the defendant administrator.
The memorandum of the Supreme Court dated February 24, 1977 erroneously sets forth that the funeral bill was denied by the Surrogate of Allegany County. The funeral bill has never been submitted to the Surrogate of Allegany County except in connection with these proceedings. Judicial notice of these matters involving the same or related subject matter and the same parties in the Surrogate’s Court has been taken pursuant to the holdings in Grace Nat. Bank of N. Y. v State of New York (30 Misc 2d 987, 988), Berger v Dynamic Imports (51 Misc 2d 988, 999), Kane v Walsh (295 NY 198, 204), Matter of Williams v Kauderer (5 Misc 2d 152), and Newitt v Newitt (282 App Div 81, 85).
The objections to the payment of the funeral expenses are threefold. The first objection is that a funeral of this dimension is excessive for an elderly man, 86 years old, who *1120 lived a meager and conservative life style. The court finds both as a matter of fact and law that whatever considerations of frugality and protection of income impelled the decedent to husband his assets during his lifetime, a funeral which provides him with a dignified interment consuming only a small proportion of his estate is both proper and warranted. See Matter of Limeri (71 Misc 2d 123) wherein burial expenses of $20,492.72 were allowed in a $300,000 estate with a discussion of relative holdings. Cases cited by the defendant do not militate a contrary finding. In Matter of Moran (75 Misc 90) the funeral expenses exceeded the amount of the estate. In Matter of Flynn (75 Misc 87) the holding was to the effect that the expenses were an overcharge, quantum valebat. In Matter of Siciliano (32 Misc 2d 789) the Surrogate limited the charges to 10% of the estate, far more than the charges here. In Matter of Derry (161 Misc 135) the court refused to order payment of the funeral expenses where the amount of the estate was unknown and could have resulted in a surcharge against the fiduciary.
The second objection is that Mrs. Rase exceeded the authority of the County Treasurer for a "modest” funeral, which he deems should have been of public assistance level. There is no evidence that the decedent was a public assistance case. The County Treasurer was, on February 2, 1976, only a possible administrator and was acting on that basis only and without knowledge of the facts as they became apparent to Mrs. Rase. He was, therefore, not in a position to fully bind her arrangements in any event. It is not surprising that she opted for a more substantial and dignified service and burial for an old friend of hers and her father’s. These matters are, at best, fraught with emotion and require instant decision. Her actions, under the circumstances, are found to be reasonable in fact.
A third objection, a legal objection, has also been urged based upon section 3440-a of the Public Health Law and the case of Parsky Funeral Home v Shapiro (83 Misc 2d 566). Defendant and the Assistant Attorney-General, on behalf of the residuary interest, contend that the plaintiff should be barred from all recovery in that the transaction is illegal and unenforceable for failure to furnish the defendant with a copy of the bill at the time the arrangements were made. Every contract tainted with a violation of a statute is not unenforceable. A contract not expressly declared void by statute must *1121 be examined in the light of the legislative intent to determine whether such intent has been frustrated, and, where express penalties have been provided, whether such penalties are adequate and appropriate sanctions to the particular acts involved. (See Encyclopedia, NY Law, Contracts, Simpson and Duesenberg, § 2401; Williston, Contracts, §§ 1628-1630B inclusive; 10 NY Jur, Contracts, §§ 123-128 inclusive.) Section 3440-a of the Public Health Law was enacted for the purpose of prohibiting two evils. The first was to prohibit the statement of a price at the time of the arrangements to which many additional charges would be added at a later date. The second was to stop the "unit pricing” of funerals by which the parties could not control the nature and extent of services to be provided. (See memorandum of law of Attorney-General to L 1964, ch 427 [NY Legis Ann, 1964, p 296] and State of New York v Garlick Parkside Mem. Chapels, 30 AD2d 143, affd 23 NY2d 754.) Neither of these practices is indicated in any way in the evidence here. In Parsky (supra) the itemized portions of the agreement were allowed by the court, and the unit price disallowed, because the unit price violated intent of the statute. In Garlick, there being no itemization at all, the entire unit price demand was denied. Parsky was partly against the public policy sought to be repressed, Garlick wholly against it.
In this case, the next friend of the deceased, with the blessings of the public administrator as a prospective administrator, made the arrangements and was fully informed of the itemization of the funeral services and costs. There followed a legal contest between the parties herein for the issuance of full letters of administration. Although nearly three months later, final letters were issued to the defendant, there is no showing that after such issuance, notice thereof was given to the plaintiff or that a demand, based upon such issuance of letters and authority was ever made upon the plaintiff. The defendant does indicate that he asked the plaintiff to send him a bill when the arrangements were first discussed and before any letters were issued or applied for. He believes his attorney demanded a bill while he had temporary letters in March. A bill was clearly sent out on July 1, 1976. Plaintiff, however, denies that he ever had any knowledge that the defendant was public administrator or that the defendant was appointed administrator either temporary or permanent.
The court concludes that the provisions of section 3440-a of *1122 the Public Health Law were inserted by the Legislature with the intent to provide a remedy for such situations as this and are ample protection to the residuary interest of the State of New York, through the office of the Attorney-General. An additional forfeiture, sought herein by the Attorney-General, is inappropriate to the nature of the violation. There was total disclosure to the arranger of all items provided and in due time, when the defendant was appointed administrator, he was advised of the details which were available at all times to him through the arranger he designated.
It appearing that the defendant has paid, directly, a portion of services, to wit: the cost of the grave, $125, the grave opening charge, $100, and the clergyman, $50, such charges are, by stipulation, deducted from the bill. Plaintiff is entitled to judgment in the amount of $3,102.
The Supreme Court having transferred the action to this court for trial purposes only it is further ordered that this memorandum of decision be transferred back to the Supreme Court of the State of New York, County of Allegany, for further proceedings in that court.